[No. 29539. Department One. June 28, 1945.]

*In the Matter of the Application for a Writ of Habeas Corpus of* BOB BRANDON, *Respondent,* v. BERT O. WEBB, *as Superintendent of the State Penitentiary, Appellant.*[1]

[1]Reported in 160 P. (2d) 529.

The *Attorney General*, R. *Paul Tjossem, Assistant,* and *John Panesko,* for appellant.

· *Bob Brandon, pro se.*

STEINERT, J.—By an amended information filed in the superior court for Lewis county on May 7, 1935, Bob Brandon, the defendant named in the accusation, was charged with the crime of murder in the first degree. Upon his arraignment on August 20, 1935, he was duly informed, by the court, of the nature of the information and was asked whether he had counsel, to which he replied in the negative. He was then asked whether he desired the services of an attorney and again answered in the negative. In response to the further question whether he was ready to plead to the information, he replied that he would enter a plea of guilty of murder in the second degree. Thereupon the prosecuting attorney announced that such a plea would be acceptable to the state of Washington. The court, expressing its opinion that murder in the second degree is an included offense within the crime of murder in the first degree, with which latter offense the defendant had been charged, and, being fully advised in the premises, accepted defendant's plea of guilty of murder in the second degree and ordered that such plea be entered of record. The defendant was then asked by the court whether he had any legal cause to show why judgment should not immediately be pronounced against him, to which he replied that he had none except as he had theretofore stated. No sufficient cause to the contrary being shown or appearing, the court rendered judgment convicting the defendant of murder in the second

degree and imposing a sentence of confinement in the state penitentiary for a period of not less than twenty-five years, nor more than thirty-five years.

Upon the entry of judgment and sentence, a warrant of commitment was issued, and pursuant thereto defendant was confined in the state penitentiary, where he has remained ever since.

Nine years later, on April 13, 1944, defendant filed in this court his petition for a writ of *habeas corpus,* seeking his discharge from imprisonment in the penitentiary and asserting that the judgment of conviction and sentence is void because no jury was ever impaneled to determine the "degree" of murder of which he was guilty, contrary to the mandate of the state constitution, the statutes of this state, and the decisions of this court. The matter was referred by this court to the superior court for Thurston county, which latter court, after due and regular hearing, rendered a memorandum opinion declaring that the defendant was entitled to have the degree of his crime fixed by a jury, and thereupon entered an order directing the superintendent of the penitentiary to deliver the defendant to the sheriff of Lewis county to be held by the sheriff until otherwise ordered by the superior court for that county. From that order, the state of Washington has appealed to this court. We shall hereinafter refer to the state as appellant, and to the defendant as respondent.

The question presented for our decision is whether, under the facts above stated, the superior court for Lewis county had authority originally to enter a valid judgment of conviction and sentence, and to issue a commitment thereon, without first impaneling a jury to hear testimony and determine the degree of murder of which respondent was guilty and the punishment therefor.

Respondent's argument is based fundamentally upon Art. I, § 21, of the state constitution, which provides that the right of trial by jury shall remain inviolate. His contention in this respect is that if, at the time of the adoption of the constitution, one accused of murder was entitled to a jury

trial, neither the legislature nor the judiciary has the power to alter that right.

■ No one will deny that at and prior to the time of the adoption of our state constitution, in 1889, the right of trial by jury had an established existence in the territory of Washington, Laws of 1854, p. 118, § 101; Code of 1881, chapter 87, p. 202, § 1078. It is noteworthy, however, that those legislative acts, which relate to criminal procedure, prescribed that trial by jury should be had on *issues of fact joined upon an indictment* (*or information,* as provided in chapter 28, Laws of 1891, p. 58, § 66 [Rem. Rev. Stat., § 2137 (P. P. C. § 140-3)]). That fact should be here kept in mind.

It is undoubtedly true that, under the constitutional provision referred to above, the right of trial by jury may not, by legislative or judicial action, be annulled, nor be so impaired, obstructed, or restricted as to make of it a nullity. That does not mean, however, that a trial by jury is imperative and compulsory in every instance, regardless of whether or not the accused by his plea has raised *an issue of fact* triable by a jury. The purpose of the constitutional provision was to *preserve to the accused the right* to a trial by jury as it had theretofore existed; it was not the purpose of the fundamental enactment to render the intervention of a jury mandatory, in the face of the accused person's voluntary plea of guilty to the charge, where no issue of fact was left for submission to, or determination by, the jury.

In this state a person who has been informed against or indicted for a crime may be convicted in any one of three ways: (1) by admitting, in his plea, the truth of the charge; (2) by confession in open court; or (3) by the verdict of a jury, accepted and recorded by the court. Rem. Rev. Stat., § 2309 [P. P. C. § 120-9]. There are, likewise, in this state but three pleas to an indictment or information: (1) guilty; (2) not guilty; and (3) a former judgment of conviction or acquittal of the offense charged. Rem. Rev. Stat., § 2108 [P. P. C. § 121-21].

■ A plea of guilty has the same effect in law as a verdict of guilty, except that, upon leave of the court, it may be

withdrawn and another plea substituted therefor at any time before the rendering of final judgment and sentence thereon. *State ex rel. Lundin v. Superior Court,* 102 Wash. 600, 174 Pac. 473. See, also, *State v. Liliopoulos,* 165 Wash. 197, 209, 5 P. (2d) 319.

Such plea is a confession of guilt and is equivalent to a conviction, leaving no issue for the jury, except in those instances where the extent of the punishment is to be imposed or found by the jury. By pleading guilty the defendant admits the acts well pleaded in the charge, waives all defenses other than that the indictment or information charges no offense, and waives the right to trial and the incidents thereof. 22 C. J. S. 655, Criminal Law, § 424; 14 Am. Jur. 952, Criminal Law, § 272.

In *Cooke v. Swope,* 28 F. Supp. (D. C. Wash.) 492, which arose on a petition for writ of *habeas corpus,* the court, in defining the effect of a plea of guilty, said:

"It is a 'record of admission of what is well alleged in the indictment.' Bishop's New Criminal Procedure, 2nd Ed. 1913, Sec. 795.2; 16 Cor. Jur. pp. 394, 400. It is a waiver of trial and all the incidences of it. See *Hallinger v. Davis,* 1892, 146 U. S. 314, 13 S. Ct. 105, 36 L. Ed. 986; *United States v. Norris,* 1930, 281 U. S. 619, 50 S. Ct. 424, 74 L. Ed. 1076."

Many of the cases hold that a plea of guilty waives all constitutional guaranties with respect to the conduct of criminal prosecutions, but in our opinion such a plea does not have that effect in those instances where the jury is required to fix the penalty, as, in this state, in murder in the first degree. Rem. Rev. Stat., § 2392 [P. P. C. § 117-5]. It will be borne in mind, however, that in the case at bar the crime to which the respondent entered a plea of guilty was not murder in the first degree, but only murder in the second degree, for which the statute itself, Rem. Rev. Stat., § 2393 [P. P. C. § 117-7], peremptorily fixes the punishment at not less than ten years imprisonment in the state penitentiary. A jury would have no voice in the matter of the punishment for that offense because, upon a plea of guilty, no issue of fact is involved and hence no further trial is required.

■ At this point, also, we note that we are not here presented with a situation where an accused person, after pleading *not guilty,* waives a jury trial and goes to trial before the court sitting alone. In such situations, this court has held that, under Rem. Rev. Stat., § 2309, one charged with the commission of a crime may not waive trial by jury unless in his plea he admits the truth of the charge or in open court confesses his guilt. *State v. Karsunky,* 197 Wash. 87, 84 P. (2d) 390; *State v. McCaw,* 198 Wash. 345, 88 P. (2d) 444. That again, however, is not the situation presented by this case. The respondent did not enter a plea of not guilty, nor did he go to trial upon such a plea. On the contrary, he pleaded guilty, as he had the right to do. *State v. Horner,* 21 Wn. (2d) 278, 150 P. (2d) 690. By such plea he waived the right to trial upon a charge of murder in the second degree, wherein the jury would have had no part in fixing the punishment.

We conclude that, in this case, there was no constitutional barrier against the validity of the judgment of conviction and sentence entered by the trial court.

Respondent next, and most confidently, bases his argument on Laws of 1854, p. 115, § 87, carried progressively forward into Rem. Rev. Stat., § 2116 [P. P. C. § 121-35], which reads:

"If, on the arraignment of any person, he shall plead guilty, if the offense charged be not murder, the court shall, in its discretion, hear testimony, and determine the amount and kind of punishment to be inflicted; *but if the defendant plead guilty to a charge of murder, a jury shall be impaneled to hear testimony, and determine the degree of murder and the punishment* therefor." (Italics ours.)

At the time of the original enactment of this legislation in 1854, the penalty for murder in the first degree was *death,* and death alone. Laws of 1854, p. 78, § 12. The penalty for murder in the second degree was imprisonment in the state penitentiary for a term of not less than ten years nor more than twenty years. Laws of 1854, p. 78, § 13. The penalty for manslaughter was imprisonment in the penitentiary for not less than one year, nor more than twenty years, and the

imposition of a fine not exceeding five thousand dollars. Laws of 1854, p. 79, § 21. In that same legislative act various other transgressions were made criminal offenses and, without being classified or given specific appellations, were made punishable by imprisonment for not less than a specified number of years, or by a fine in a variable amount, or by both. Then, in an accompanying act, in Laws of 1854 (p. 121, § 128), it is provided:

"When the defendant is found guilty, the *jury* must state in their verdict the amount of fine, and the punishment to be inflicted." (Italics ours.)

Thus it will be seen that under the act of 1854 the *jury* was required to determine and, in its verdict, establish the degree of the crime, in a case where degrees were involved, and in all cases to fix the punishment to be inflicted. This was true not only with respect to the extended category of crimes wherein the penalties were variable but also with respect to the specific crime of murder in the first degree wherein the invariable penalty was death.

In 1869 the territorial legislature passed an act amendatory of the act of 1854, and in the later act provided that when a defendant is found guilty, *the court, and not the jury,* shall fix the amount of fine and the punishment to be inflicted. Laws of 1869, p. 198 *et seq.*, § 258 (now Rem. Rev. Stat. § 2172 [P. P. C. § 140-51]). Section 12 of the act of 1869, retained, however, that provision of the act of 1854 which made death the exclusive penalty for murder in the first degree.

In 1909, the state legislature passed an act which provided that murder in the first degree shall be punished by death or by imprisonment in the state penitentiary for life, *in the discretion of the court,* and that murder in the second degree shall be punished by imprisonment in the penitentiary for not less than ten years. Chapter 249, Laws of 1909, p. 890 *et seq.*, §§ 140, 141, pp. 930, 931.

In 1913, the death penalty was abolished and the crime of murder in the first degree was made punishable by imprisonment for life in the state penitentiary. Chapter 167,

p. 581, § 1, Laws of 1913. Finally, in 1919, the legislature enacted chapter 112, Laws of 1919, p. 273 (now Rem. Rev. Stat., § 2392), which, after defining murder in the first degree, provides:

"Murder in the first degree shall be punishable by imprisonment in the state penitentiary for life, unless the jury shall find that the punishment shall be death; *and in every trial for murder in the first degree, the jury shall, if it find the defendant guilty, also find a special verdict as to whether or not the death penalty shall be inflicted; and if such special verdict is in the affirmative, the penalty shall be death, otherwise, it shall be as herein provided."* (Italics ours.)

The penalty for murder in the second degree, prescribed by the 1909 act, however, was not changed and is still imprisonment in the state penitentiary for not less than ten years. Rem. Rev. Stat., § 2393.

■ The recital of these legislative enactments and changes therein since 1854 demonstrates that at the present time the court, and not the jury, fixes the penalty, in accordance with the provisions of the relevant statutes, except in the one instance wherein a trial is had for murder in the first degree. In the latter event, if the accused is found guilty, the jury must render a special verdict as to whether or not the death penalty shall be inflicted. There is, therefore, in such instance, an issue to be determined by the facts in the particular case, which issue the jury alone can, and must, decide. In all other instances, there is no such issue, and hence there is nothing for the jury to determine. As stated in the earlier part of this opinion, in our discussion of the constitutional question, a plea of guilty has the same effect as a verdict of guilty, unless by leave of court the plea is withdrawn and another plea substituted therefor before final judgment and sentence. In this case, respondent's plea of guilty of murder in the second degree has never been withdrawn, nor has another plea been substituted in place thereof. The question of punishment therefore never became one requiring consideration by the jury. To hold otherwise would be to say that upon a conviction of the crime of murder in the second degree, the jury

has the authority and power to determine whether the penalty should be death or imprisonment in the penitentiary. Manifestly, that is beyond the province of the jury.

Respondent further contends that, had a jury been impaneled, it would have been empowered and would have had the right to find, under Rem. Rev. Stat., § 2116, as quoted above, that respondent was guilty of only manslaughter instead of murder in the second degree.

It will be noted that the statute, Rem. Rev. Stat., § 2116, speaks of "the degree of murder," not the degree of crime. When that statute was passed in 1854, the law defined murder in the first degree, murder in the second degree, manslaughter, and various other offenses. Laws of 1854, pp. 78 to 82, §§ 11 to 39, inclusive. However, the statute created but two degrees of murder: (1) the killing of a human being purposely, with deliberate and premeditated malice, and (2) the killing of a human being purposely and maliciously, but without deliberation and premeditation. Manslaughter was a separate and distinct crime, resulting from unlawfully killing a human being, without malice express or implied, either voluntarily upon sudden heat, or involuntarily but in the commission of some unlawful act. In other words, the lowest *degree* of murder was murder in the second degree.

In 1909, the legislature adopted the broader and more general term of "homicide," defining and classifying it thus:

"Homicide is the killing of a human being by the act, procurement or omission of another and is either (1) murder, (2) manslaughter, (3) excusable homicide or (4) justifiable homicide." Rem. Rev. Stat., § 2390 [P. P. C. § 117-1].

The four categories are then segregated and specifically defined in successive sections, from § 2392 to and including § 2406 [P. P. C. §§ 117-5 to 117-33]. Again, however, the classification and definitions recognize but two degrees of murder, while manslaughter is incorporated in a separate and distinct class.

Although manslaughter is included, as a matter of law, in the crime of murder in either the first or second degree, nevertheless before a jury can properly find a verdict

as for the lesser offense, there must be evidence of the facts constituting such offense. *State v. Pepoon,* 62 Wash. 635, 114 Pac. 449; *State v. Ash,* 68 Wash. 194, 122 Pac. 995; *State v. Hiatt,* 187 Wash. 226, 60 P. (2d) 71. In the case at bar, there was no such evidence, for the simple reason that respondent, having pleaded guilty to the charge of murder in the second degree and thereby admitting the truth of the charge, precluded himself from offering testimony which might in any event have established that he was guilty of only manslaughter.

▇ Rem. Rev. Stat., § 2167 [P. P. C. § 140-39], provides that upon an indictment or information for an offense consisting of different degrees the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense. Rem. Rev. Stat., § 2168 [P. P. C. § 140-41], provides that in all other cases the defendant may be found guilty of an offense, the commission of which is necessarily included within that with which he is charged in the indictment or information. In all instances, however, a verdict finding the defendant guilty of the lesser degree or of the included offense must be supported by evidence substantiating the commission of such lesser degree or included offense. Such evidence can be produced, however, only where there is a trial, not upon a plea of guilty.

▇ While manslaughter is sometimes loosely spoken of as a degree of murder, it is actually not so, and has never been so denominated by any statute of this state. Although it is an included offense within the crime of murder, it is nevertheless a distinct crime of itself. 26 Am. Jur. 160, Homicide, § 9; 29 C. J. 1125, Homicide, § 112; 40 C. J. S. 901, Homicide, § 39. The decisions of the various courts fully support that statement. In *Folks v. State,* 85 Fla. 238, 95 So. 619, where murder in the first degree was charged and the defendant convicted of manslaughter, the court said: "Manslaughter is not a degree of murder, but it is a grade or degree of unlawful homicide."

In *State v. Johnson*, 215 Iowa 483, 245 N. W. 728, the defendant was charged with murder in the second degree and was convicted of manslaughter. The court therein said: "Manslaughter is not a degree of murder, but an included crime."

In *People v. King*, 30 Cal. App. (2d) 185, 85 P. (2d) 928, the court made this statement: "Moreover, manslaughter is a crime distinct from murder, but may, however, be included in it."

Similar statements will be found in *State v. White*, 41 Iowa 316, 20 Am. Rep. 602; *State v. Brown*, 152 Iowa 427, 132 N. W. 862; *State v. Quan Sue*, 191 Iowa 144, 179 N. W. 972; *Boyett v. State*, 69 Fla. 648, 68 So. 931.

 From our analysis of Rem. Rev. Stat., § 2116, in the light of its legislative history and its relation to the other sections of the statute referred to above, we arrive at the conclusion that, the respondent having pleaded guilty to a charge of murder in the second degree, the trial court was not required, nor permitted, by virtue of § 2116, to impanel a jury to hear testimony and determine the "degree" of murder.

Finally, respondent contends that this court, in the case of *In re Horner*, 19 Wn. (2d) 51, 141 P. (2d) 151, has construed Rem. Rev. Stat., § 2116, to require the impaneling of a jury in a case such as this. In that case, the defendant Horner pleaded guilty to a charge of murder *in the first degree,* and the trial court, without impaneling a jury to determine the degree of murder and the punishment therefor, immediately adjudged the defendant guilty and sentenced him to life imprisonment. On appeal to this court several questions were raised and considered, and on the point here involved this court made the following statement, on which the respondent so strongly relies:

"In the instant case, it is manifest, from the plain terms of the statute, that the petitioner did not—and, indeed, could not—waive a jury by his plea of guilty; and it is equally apparent that the trial judge had no authority to enter judgment and sentence unless and until a jury determined the degree of the crime, for the applicable statute reads as follows: [quoting Rem. Rev. Stat., § 2116]."

.It will be noted that in that case the defendant pleaded guilty to a charge of murder in the first degree. Consequently, the trial court could not sentence the defendant until and unless a jury should determine the degree of murder and the punishment therefor. In the light of the facts in that case, the holding of this court as set forth in the language above quoted, was strictly correct. But, as already shown, we do not have that situation here, for the respondent pleaded guilty to a charge of murder in the second degree, and there was nothing for a jury to determine. The *Horner* case, *supra,* is neither applicable to, nor controlling of, the case now before us.

The order of the trial court is reversed, and the petition for writ of *habeas corpus* will be dismissed.

BEALS, C. J., SIMPSON, JEFFERS, and GRADY, JJ., concur.

