STATE OF MONTANA, Plaintiff and Respondent, v. MARVIN W. McBANE, Defendant and Appellant.

No. 9332.
Submitted May 17, 1954. Decided October 19, 1954.
275 Pac. (2d) 218.

Mr. Wellington D. Rankin, Mr. Arthur P. Acher, Helena, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Hubert J. Massman, Asst. Atty. Gen., Mr. E. Gardner Brownlee, County Atty., Hamilton, for respondent.

Mr. Acher, Mr. Massman and Mr. Brownlee argued orally.

MR. JUSTICE ANDERSON:

This is an appeal from a judgment of conviction. Defendant was sentenced to serve five years in the state penitentiary after a plea of guilty of desertion of minor children.

All sorts of facts are present in the record indicating odd, and if true, criminal and contemptuous behavior on the part of the defendant, all of which took place after the defendant entered his plea of guilty and before judgment was entered.

Although the defendant has raised several specifications of error in his brief and the state in its brief discusses most of them, nonetheless there is but one question of importance involved, i. e., did the district court act arbitrarily in refusing to allow the defendant to withdraw a plea of guilty.

*All doubt should be resolved in favor of a trial on its merits.* State v. Dryman, 125 Mont. 500, 241 Pac. (2d) 821.

It appears that the district judge was of no mind to impose a severe penalty upon the defendant at the time the plea of guilty

was first made. Quite to the contrary, it seems that all and everything was done to effect a compromise of the cause then before the lower court, apparently under the powers granted by R. C. M. 1947, sec. 94-302. The patience of the district judge in this respect was admirable and the intervening acts of the defendant, as said before, were abominable.

However, the likelihood seems great that the severe sentence in the instant case was meted out, not for what the defendant had done by way of abandoning his wife and children prior to the filing of the information or at the time it is alleged the abandonment took place, but for causes resulting from his subsequent behavior. The defendant at the time of arraignment could not have had anything but a complete misunderstanding of the law relating to the offense with which he was charged.

Serious doubt is shown by these circumstances and under the cases heretofore announced by this court, the same should be resolved in favor of the party requesting the change of plea.

If the district judge could change his mind from that of attempting a compromise to one of severity (and at the same time as will be presently pointed out, shift from one section of the Code to another) because of the behavior of the defendant, surely the defendant should and did have the right to change his plea from guilty to not guilty.

"Leave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable ground is offered for going to a jury." 14 Am. Jur., sec. 287, p. 961.

"A plea of guilty should be entirely voluntary, by one competent to know the consequences, and should not be induced by fear, persuasion, promise, or ignorance." State ex rel. Foot v. District Court, 81 Mont. 495, 263 Pac. 979, 982; State v. McAllister, 96 Mont. 348, 30 Pac. (2d) 821; State v. Casaras, 104 Mont. 404, 66 Pac. (2d) 774.

The information that was filed in the district court charges the defendant with a felony as provided by R. C. M. 1947, sec. 94-304.

The defendant was brought before the court for arraignment on January 21, 1953, and the record of that proceeding discloses the following:

"Marvin W. McBane: I rather just plead guilty now.

"The Court: You want to plead guilty?

"Marvin W. McBane: Yes, sir. I don't even think I want a lawyer.

"The Court: I think before you plead guilty—you don't recall the section you have? Before you plead guilty I want you to understand just what you are pleading guilty to. 94-304. Well, *just a part of this law is: (Whereupon the Court read Section 94-304 to the defendant in its entirety.)*

"The Court: Where are you living now?

"Marvin W. McBane: Sir, I was working in California. I had just taken a job there. I mean, I had hoped to return there if I—

"The Court: Well, this has a pretty stiff penalty; if you are deemed guilty upon conviction you will be deemed guilty of a felony. That is, imprisonment in the state prison not exceeding 7 years, by imprisonment in the county jail. You see what you are doing? If you plead guilty you are placing yourself at the mercy of the Court; that's why I want to explain to you thoroughly before you plead guilty. *Now, there is another portion of this law. (Whereupon the Court read Section 94-302 to the defendant in its entirety.)*

*"The Court: Well, that's a fair summary of the law. Then here is another part. (Whereupon the Court read Section 94-301 to the defendant in its entirety.)*

"The Court: Of course that would not be exceeding a fine of $500 and imprisonment in the county jail not more than six months, or both such fine and imprisonment, *and then follows the other provisions here giving the Court additional power. Now, having understood the law,* I again ask you if you want a lawyer.

"Marvin W. McBane: No, sir, I don't.

"The Court: Very well. Do you want to plead now?

"Marvin W. McBane: Yes, sir, I will plead guilty.

"The Court: How far have you been in school? Been to high school?

"Marvin W. McBane: I have been through grade school, and I am taking a high school course now.

"The Court: Through a high school course now?

"Marvin W. McBane: No, sir, two years, and I am taking the additional two years.

"The Court: You mean you have had two years in high school?

"Marvin W. McBane: Yes, sir.

"The Court: You understand now what the situation is?

"Marvin W. McBane: Yes, sir, and I still plead guilty.

"The Court: *And if you plead guilty you understand you place yourself in the power of the Court?*

"Marvin W. McBane: Yes, sir, I do.

"The Court: I think you understand the situation. You heard the Information read to you; you understand the nature of the cause, or rather the charge against you by the State of Montana. You may stand up now. How do you plead to the charge contained in this Information, charging you with desertion of children, a felony, guilty or not guilty?

"Marvin W. McBane: Guilty, sir." Emphasis supplied.

Subsequent to the above events the court appointed counsel for the defendant and on January 28, 1953, the following proceeding was had:

"The Court: State of Montana versus Marvin W. McBane. The defendant present?

"Mr. Johnson: Defendant is present.

"The Court: You are Mr. McBane?

"Marvin W. McBane: Yes, sir.

"The Court: The court minutes show in this case last Wednesday this action came on on a motion of the County Attorney, E. Gardner Brownlee, for leave to file an information against this defendant, charging him with desertion of children, a felony;

leave was granted, and the Information filed. The defendant was given a copy of the Information. He answered that his true and correct name was Marvin W. McBane. The Court then read the Information; the defendant answered that he did not wish a lawyer, and that he was ready to plead. *The Court then read Section 93-304 of the Revised Codes, 1947*, relating to the desertion of children. Defendant stated that he was ready to plead. He then entered a plea of not guilty; the County Attorney stated he would like to be better informed by talking with the representative of the County Welfare before making any recommendation. The Court, after considering statements made by the defendant, appointed Claude A. Johnson to defend this defendant, and then continued the hearing until Wednesday, January 23, 1953 at 10:00 o'clock a. m. Bond was fixed at $500.

"Mr. Johnson: May it please the Court, shouldn't that be January 28, instead of January 23?

"The Court: Continued the hearing until January 28, 1953, at 10:00 o'clock a. m.

"Mr. Brownlee: If it please the Court, the minutes read that he plead not guilty; I believe his plea was guilty. He never withdrew it last week.

"The Court: Well, did I say 'not guilty?'

"Mr. Brownlee: You read it 'not guilty.' I believe the minutes say guilty.

"The Court: Either I misspoke myself or you misunderstood me, because the minutes say he then entered a plea of guilty. The cause is continued to this time. Mr. Johnson, what have you to say about this case?

"Mr. Johnson: If it please the Court, at this time we would like the plea of guilty—if such a plea were made—withdrawn, so we can proceed further on this matter.

"The Court: You want to withdraw the plea of guilty?

"Mr. Johnson: Yes, sir—if such a plea were made. I was not present in Court at that time.

"The Court: Well, he plead guilty, and he was clearly advised as to his rights; that he did not need to plead last Wednesday,

but could plead at this time. Mr. Brownlee, what have you to say in regard to withdrawal of his plea of guilty?

"Mr. Brownlee: If the Court please, I am opposed to it. I believe the man was fully advised of his rights, and I believe his plea was entered by him and he knew the facts, and the plea should stand.

"The Court: Unless there is some showing made of misunderstanding or that he did not understand his rights, I will deny the right—deny the defendant the right to withdraw his plea of guilty. He was very fully informed as to his rights; the Court took particular pains to advise him that he did not have to plead guilty at that time or at any time. *In fact, the Court, as I recall it, read to him very carefully the law with reference to the offense with which he was charged, Section 93-304; isn't that true, Mr. Brownlee? Didn't the Court—*

"Mr. Brownlee: That is correct, if the Court please. As I remember it, the Court went into it much more fully than the Court does in the usual case.

"The Court: The application to withdraw the plea of guilty is denied." Emphasis supplied.

It just plainly is not so that the defendant was carefully advised, at the time of arraignment, as to his rights and as to the nature of the offense with which he was charged.

The court apparently reversed its position from time to time and proceeded under sec. 94-301, sec. 94-302, supra, or sec. 94-304.

The district judge after January 28, 1953, and after hearings, directed that the defendant could go out and look for work within the State of Montana, and later directed that the defendant could go to California. In both instances bond was set, the orders were subject to change from time to time and the undertakings were conditioned that the defendant make his appearance in court whenever ordered, all of which is authorized by sec. 94-302, supra, subd. 2, and none of which is authorized by sec. 94-304, supra. Yet after having proceeded with such powers granted by sec. 94-302, the district court pronounced its judgment under the provisions of sec. 94-304, supra.

Although the affidavit made by the defendant in the lower court in support of a change of plea does not make reference to the confusion created by the citing of several statutes to the defendant when his plea of guilty was made, nonetheless there is sufficient showing in the affidavit to cause doubt as to the guilt of the defendant regardless of what statute he may have thought applicable and such doubt is for a jury. In the affidavit there is a request by the defendant that the stenographic notes of the arraignment be typed and considered by the court.

From the record taken as a whole and in particular with the circumstances above set out, it cannot be said that the plea was entirely voluntary and made without inducement creating misunderstanding by the defendant. To say the least, it could not be expected that the defendant, one wholly untrained in legal niceties, would better understand the consequences of the act with which he was charged than would the learned judge below. On application to change a plea, all doubt should be resolved in favor of a trial on the merits. State v. Casaras, supra. Where, as here, the court below by its own action set into motion the circumstances creating doubt it should not have been hesitant in allowing the application for a change of plea.

In view of the record before us, it is our judgment that the court below abused its discretion in refusing to grant the defendant's motion to change his plea. The judgment is reversed and the cause is remanded to the district court with directions to set aside its judgment and to sustain the defendant's motion to change the plea of guilty to that of not guilty.

MR. CHIEF JUSTICE ADAIR: dissents.

MR. JUSTICE FREEBOURN: (specially concurring).

I concur in what MR. JUSTICE ANDERSON has said, and believe defendant entitled to a trial by jury for the further reason that Article III, sec. 23, of our state Constitution, provides: ''The right of trial by jury shall be secured to all, and remain inviolate, but in all civil cases and in all criminal cases

not amounting to felony, upon default of appearance, or by consent of the parties expressed in such manner as the law may prescribe, a trial by jury may be waived * * *.''

"Inviolate" means unimpaired and is synonymous with "sacred." Merriam-Webster's New International Dictionary, 2nd Edition.

Being guaranteed the right to a trial by jury, there is no sound reason, since the state gives up nothing, why a defendant charged with a felony should be denied the "sacred" right to a trial by jury, where after plea of guilty but before the commencement of his sentence he demands such right.

To my mind, the defendant has such constitutional right to such trial by jury, where charged with a felony, and the trial judge has no discretion in the matter, but must grant such demand when made.

MR. JUSTICE BOTTOMLY, concurs with the special concurring opinion of MR. JUSTICE FREEBOURN.

MR. JUSTICE ANGSTMAN: (dissenting).

The majority opinion is rested on the single proposition that the trial judge acted arbitrarily in refusing to allow the defendant to withdraw a plea of guilty.

I do not agree that such is the case. It is true that a plea of guilty should be entirely voluntary and without any procuring cause such as duress, undue influence, fear, promise, mistake, ignorance or misapprehension and doubts should be resolved in favor of a trial on the merits. State v. Dryman, 125 Mont. 500, 241 Pac. (2d) 821; State ex rel. Foot v. District Court, 81 Mont. 495, 263 Pac. 979; State v. Casaras, 104 Mont. 404, 66 Pac. (2d) 774. But permission to withdraw a plea is not a matter of right but is within the sound discretion of the court, 22 C. J. S., Criminal Law, sec. 421, p. 638; 14 Am. Jur., Criminal Law, sec. 286, p. 961, and subject to review only where there has been an abuse of discretion, State v. Nance, 120 Mont. 152, 184 Pac. (2d) 554.

In order to determine whether the court abused its discretion in denying the motion, we must look to the proceedings and evidence before the court when the motion was ruled on. A reading of the entire record, much of which is quoted in the majority opinion, convinces me that the court was careful to point out to defendant his right to counsel and his right to defer entering his plea until after consulting counsel but that defendant repeatedly refused to have counsel appointed for him before entering his plea and counsel was actually appointed only to aid the court in gathering proper information to be considered by the court before imposing sentence.

It was developed that defendant has five children. Asked why he hadn't taken care of them, he replied, "Sir, this is not changing my plea any—I sent money, I sent money to my wife; if she denies it, I won't argue with her.

"The Court: How much have you sent to your wife in the last year?

"Marvin W. McBane: In the last year, sir, in dollars I couldn't exactly say, but she received enough that she should have provided.

"The Court: Well, in round numbers, how much have you sent to her?

"Marvin W. McBane: Since May, I know for a fact, May of—this last May, I sent better than $200 a month up through September."

Defendant had a leave of absence from his employment in Alaska and came to the States in September 1952. The court asked him if he visited his wife and children upon returning to the States and his reply was, "With the facts that I had to return to her under, I just couldn't bring myself to meet her."

Defendant then testified that he had spent five years in the service of the government in the Marine Corps. The court stated to him, "I wish you would let me appoint a lawyer for you to see your side of this case," to which he replied, "Sir, I plead guilty because I don't want a lot of facts of a family nature brought up. If she won't admit the fact I gave her money, I will take the

punishment.'' The court thereupon stated that it did not want to pass sentence until it had all the facts and announced that it would appoint a lawyer to make an investigation and continued the hearing to a time stated; bond was fixed at $500 and defendant was ordered to remain in Hamilton.

At the time to which the hearing had been continued, defendant's counsel moved the court to withdraw the plea of guilty. The court indicated that it would deny the motion unless it was supported by facts showing a misunderstanding or other cause. After some discussion by counsel, hearing on the motion to withdraw the plea was continued to a time stated. When that time arrived a further continuance was granted, subject to being called up at any time, and request was made that defendant go wherever he desired in the State of Montana in search of employment in order to care for his family. Upon consulting with the chairman of the board of county commissioners of Ravalli County, this was granted, after defendant agreed to the conditions and promised to seek employment and remain in the state and endeavor to support his family and report to the county attorney.

Further hearing was called for February 25, 1953. The county attorney requested that defendant be permitted to go to California to attend a trial wherein he was seeking to recover money from an attorney, and if successful there was a chance that his family might receive some of the money. This was allowed after defendant promised to return promptly after the trial.

The matter was called for further hearing on March 25, 1953. The California trial was concluded on March 6th and defendant's whereabouts on March 25th were unknown. Defendant's parents who had supplied bail petitioned the court to issue a bench warrant to have him apprehended. The warrant was issued.

On April 8, 1953, written motion to withdraw the plea of guilty was made supported by affidavits. Defendant made affidavit stating that the reason why he was unduly influenced to plead guilty was out of consideration for his wife, stated as follows: ''My wife had asked for and received money and aid from Ravalli Co. and other church welfare and good citizens. Of this she

had no right. I had no knowledge of these facts until my return. I thought my wife would be guilty or thought of as accepting these funds and help without reason or need. That if I did testify to the true amount of money it would be against her character. Which would reflect on her as a mother.''

The record shows that defendant left his home in Hamilton on or about September 8, 1951, and went to Alaska where he accepted employment with the United States government doing heavy diesel mechanic work. He received take home pay of $214 for each two weeks' work. Though leaving Hamilton with his wife's consent, he was absent three months before contacting his family, consisting of his wife and five children. One of the children meanwhile had been hospitalized for malnutrition. The public welfare department, as well as the county attorney, found it necessary to write to defendant with respect to his failure to support his children. After thus writing to defendant, he sent $100 to his wife by money order dated December 4, 1951.

For the full year from September 1951 to September 1952, defendant received take home pay amounting to about $5,500. He contends that he sent to his family $1,725, the last payment being received by his wife about January 25, 1953. The state, contends, however, that he contributed only $1,019 instead of $1,725 during that period.

While in Alaska defendant met Joyce DeYette, became entangled in a love affair with her and in March 1953 entered into a bigamous marriage with her in Nevada.

Defendant in his affidavit, in support of his motion to withdraw his plea of guilty, states that before going to Alaska he made arrangements with his parents and his wife for food and clothing for the family until he received his wages on his new job. Affidavits by defendant's father and mother corroborated his statement that arrangements had been made and carried out by them to provide food and pay bills for defendant's wife while he was in Alaska and until such time as defendant received pay for his services.

The county attorney made an affidavit in opposition to the mo-

tion to change the plea, wherein he stated that defendant when released on bond had obtained funds which he did not turn over to his wife and family as he agreed; that in violation of his agreement defendant did not return to Montana after going to California to attend the trial of an action there pending, but instead went to Nevada and entered into a bigamous marriage with Joyce DeYette; that defendant and Joyce DeYette were living together as man and wife in Salt Lake City, Utah, where defendant was arrested on a bench warrant issued by the court.

Defendant testified orally on the motion stating in substance that he pleaded guilty to "shield my wife of something that she is very guilty of, and I think that if the figures could be looked at as to the amount of money she received from this county plus the facts how much I sent her, that she is guilty of a crime also; that my thought in pleading guilty to this was that I was shielding her as a mother, and I still say that she is a mother, and it's not against the character as a wife."

The court denied the motion and imposed sentence. I think the court did not abuse its discretion in denying the motion to change the plea.

The evidence was such that the court could consider the defendant who had had two years of high school training knew what he was doing when pleading guilty. The evidence was sufficient to warrant the court in concluding that the plea was entered voluntarily without any procuring cause such as duress, undue influence, fear, promise, mistake, ignorance or misapprehension. In fact there was no claim made to the contrary. Defendant makes no claim that he did not understand what he was doing when pleading guilty. He makes no showing that he was in anywise confused as to his rights.

Defendant's story that he wanted to shield his wife does not square with his actions in entering into a marriage with Joyce DeYette.

Defendant further contends that the record shows he did not desert his children at the time alleged in the information. to wit: September 8, 1951. It is true that the record shows that

he left Montana with the consent of his wife but that he had the intent to desert his family at the very moment may be shown by circumstantial evidence. The fact that he did not send any money for their support for three months is some evidence of his intent at the time he left Hamilton. Furthermore, the precise time when the crime was committed is unimportant in view of our statute, R. C. M. 1947, sec. 94-6408, so long as the offense is committed before the filing of the information. See State v. Terry, 77 Mont. 297, 250 Pac. 612.

Defendant's counsel argues that defendant was misinformed as to the law applicable to his case. The court read to the defendant, before accepting his plea of guilty, the statutory provisions treating of the question of deserting and abandoning children and failing to provide for their support. The court read R. C. M. 1947, sec. 94-304, which makes it a felony to desert and abandon children under fifteen years of age without providing food, care and clothing for them. After reading this section to the defendant, the court pointed out specifically as above noted that the crime involved was a felony carrying a stiff penalty not exceeding seven years imprisonment in the state prison. The court then read sections 94-301 and 94-302 which make it a misdemeanor to omit without lawful excuse to furnish necessary board, clothing, shelter or medical attention to children under the age of 16 years. Defendant in his affidavit makes no claim that he was misled by the court in reading the law to him. He makes no claim either in his affidavit or oral testimony that he was actually led to believe that he was pleading guilty to a misdemeanor charge. In fact, his only claim of undue influence or procuring cause for pleading guilty, other than his actual guilt, was the tender concern for his wife's welfare, which the court was warranted in concluding was fairly well negatived by his conduct.

As to the special concurring opinions, it is sufficient to say that any person may waive the benefit of a law enacted for his benefit. That applies to a constitutional right as well as to a statutory right.

I think the judgment appealed from should be affirmed.