STATE OF MONTANA, Plaintiff and Respondent, *v.* LEO F. SCALISE, Defendant and Appellant.

No. 9646.

Submitted March 2, 1957.   Decided April 11, 1957.

309 Pac. (2d) 1010.

Mr. Jerry J. O'Connell and Mr. John M. McCarvel, Great Falls, for appellant.

Mr. Arnold H. Olsen, former Atty. Gen., Mr. Forrest H. Anderson, Atty. Gen., Mr. Louis Forsell, Asst. Atty. Gen., Mr. Irving C. Pearson, County Atty., and Mr. John L. McKeon, Sp. Asst. Atty. Gen., Anaconda, for respondent.

Mr. McCarvel, Mr. McKeon and Mr. Forsell argued orally.

MR. CHIEF JUSTICE HARRISON:

This is an appeal from a judgment upon plea of guilty, and involves the denial of a motion to withdraw plea of guilty and substitute plea of not guilty.

Information charging the appellant with the crime of obtaining money by false pretenses, a felony, was filed on November 15, 1955, after leave of court having first been obtained. Appellant appeared for arraignment on November 16, being represented by his counsel, J. B. McKnight, Wade J. Dahood, M. E. Ruane and Sid G. Stewart, and requested the statutory time for

entry of plea. The matter was then set for hearing by the court for November 17, at one o'clock. A motion was made on this occasion by the county attorney to appoint Robert J. Boyd, as special prosecutor, which motion was objected to and by the court overruled. Boyd was thereupon appointed special prosecutor.

On November 17, appellant and his counsel were present in court, at which time a demurrer was filed to the information. The court set the time for hearing the demurrer for one o'clock on November 18, and on that date appellant's counsel filed another demurrer setting forth an additional ground. Argument was had and the court overruled the two demurrers. Appellant entered a plea of not guilty. The court set the trial of appellant to commence at ten o'clock on November 22. On November 21, appellant and his counsel came before the court and requested permission to withdraw the plea of not guilty, which request was granted. Appellant then entered a plea of guilty and requested that pronouncement of judgment be delayed until December 10, 1955, which request was granted, and the matter continued until that date at ten o'clock.

On December 10, the appellant and his counsel were present in court, at which time a request was made and granted for a recess of fifteen minutes. Upon reconvening of court, the then attorneys of record, with the consent and at the request of the appellant, filed their withdrawal as attorneys of record. At the request of John Michael McCarvel, the names of Jerry J. O'Connell and John Michael McCarvel were entered as counsel for the appellant. A motion to withdraw plea and affidavit in support thereof was then presented to the court. Before any argument was had upon the motion, Mr. McCarvel requested the judge to disqualify himself. Upon request of the county attorney, the names of Wellington D. Rankin and Arthur Acher were ordered entered as associate counsel for the state. An objection to this request was made by Mr. McCarvel and overruled by the court.

The court proceeded to a hearing upon the motion, and at the

conclusion thereof denied the request for disqualification, denied the motion for leave to withdraw the plea, and entered judgment against the appellant pursuant to his plea of guilty.

The specifications of error are four in number and contend that the court erred in refusing to grant the motion, in permitting Rankin and Acher to be entered as associate counsel for the state, in its conduct of the hearing on the motion, and in introducing and permitting the introduction of irrelevant, incompetent and immaterial matter upon the hearing.

In order to understand the specifications, it will be necessary to briefly set forth the fact situation which prevailed at the time of the hearing before the court.

It appears from the record that the appellant, Robert Daly and Mrs. Florence Kasky were the county commissioners of Deer Lodge County. For some weeks prior to the date of the hearing there had been pending removal proceedings against these commissioners. In such removal proceedings, attorneys Rankin and Acher were counsel of record against the commissioners, in which action the district judge had been disqualified. The commissioners had instituted removal proceedings against the county attorney, and by reason of that fact it appears he requested the court to appoint a special prosecutor in the instant case.

The information herein was not the first information which had been filed against the appellant for this offense. The first information was filed on October 17, 1955. Prior to that date, and on or about the 10th day of October, 1955, the appellant learned that the fraudulent claim had been discovered. A complaint was filed against him in the justice court on or about October 12, 1955. The appellant had consulted with his attorneys since that time with regard to the charge. Many conferences had been had between the appellant and his counsel, and these became more frequent as the trial date approached.

On or about the 16th or 17th of November, the appellant called upon the district judge without the knowledge of his counsel. He told the judge that he was very worried about the case, and wanted to know if the jury found him guilty if the judge would

suspend the sentence, because he felt that if he were found guilty he might receive a very severe sentence. At that time the judge advised him he had no animosity or ill will toward him, and that he hadn't any desire to punish him unreasonably. Appellant requested the judge not to advise his attorneys that he had been to see him, but was informed by the judge there should be no secret about the matter.

It is obvious that appellant's counsel were diligently working in an effort to get a suspended sentence for their client, for, on November 19, one of counsel called upon the judge and was informed by him that he had no animosity or ill will against the appellant, felt sympathy for his family, and did not desire to injure him permanently. The judge also indicated that if the appellant went to trial, and the sentence was left to the court, or if he entered a plea, the court felt he should be punished to some extent, probably not more than a year in the state prison. The judge would not consider a suspended sentence. There were other conferences between the court and counsel, and eventually the court agreed that on a plea of guilty the sentence would be one year.

On Saturday afternoon, November 19, appellant met with counsel who then advised him that up to that time it had been impossible to get a commitment on a suspended sentence. There was another meeting on Sunday, November 20, in Mr. Knight's office, and counsel then went over the situation again with the appellant. After some discussion appellant went home, secured his wife and returned with her to the office for further discussion. Appellant then brought up the proposition that he would like to stay home for Christmas, and if he could start serving his sentence on the 2nd day of January it would be satisfactory with him. Counsel told him, at that time, they would try to do everything they could to get as much time as possible before he would have to start serving the sentence.

One other factor was brought out in this conference by the appellant, and that was that in any event he did not wish to go before the 10th of December because his vacation pay would not

be realized unless he worked through December 9. If he could be granted time up to then, he could acquire some money with which to care for his wife and family. His counsel were still to continue their efforts to get a suspended sentence, if at all possible, and so matters rested at the conclusion of that day.

On the following day, November 21, around three o'clock in the afternoon, counsel came to the courthouse. At that time there were present Messrs. Boyd, Pearson, Rankin and Acher representing the state, Messrs. Knight, Dahood, Stewart and Ruane representing appellant, and Mr. Skedd representing Mrs. Kasky. The appellant was also present in the courthouse but was not present at the various conferences held that afternoon between counsel and the court, however, he was consulted privately from time to time by his counsel as to the status of the negotiations.

Late in the afternoon an agreement was reached, between all parties present including the appellant, that he would plead guilty to the charge against him. Mrs. Florence Kasky would resign as a commissioner, and the removal proceedings against the commissioners and the county attorney would be dropped.

Appellant's counsel then asked the court if they could come into court with appellant, and change his plea that day rather than come back the next day, being the day set for the trial. Such permission was granted. The appellant came into court with his counsel, changed his plea to guilty, and the matter of sentencing appellant was, on request of counsel, set for December 10, 1955. Agreements were prepared in the other actions in which the appellant and others were involved and they were disposed of.

Thereafter, appellant's counsel continued to act in his behalf, and drew up petitions which were circulated in the community requesting the court to suspend the sentence. Such petitions were presented to the court and contained many signatures.

On December 10, when the matter came before the court, the court examined all of the attorneys involved on behalf of the appellant. The appellant testified in his own behalf, and in the course of his testimony stated:

"A. I understood that I was going to get the year.

"Q. And before you plead guilty, your lawyers advised you that you wouldn't get a suspended sentence, isn't that right? A. That's right, yes.

"Q. And you had offered to plead guilty long before that if you could get a suspended sentence—you were always ready to plead guilty, if you could get a suspended sentence? A. Yes, I wanted to get out of there the first day, but I didn't have a chance.

"Q. But you were ready to plead guilty for a long time, if you could get a suspended sentence? A. If I could get a suspended sentence, absolutely I would have—I would have done that the first day, but they wouldn't give me the break to do it, that could have been done the first day.

"Q. That could have been done the first day? A. Yes."

With reference to the crime with which he was charged, he testified as follows:

"Q. Isn't it a fact that when this raise thing was mentioned in the presence of Mr. Pearson, that he said that he didn't care if you got a raise? Yes, he told me that, that is right, he said go ahead.

"Q. And get a raise? A. Yes, he did.

"Q. He never at any time told you to make out a false claim? A. He didn't tell me no way—he didn't mention no way.

"Q. The idea of this claim was your own idea—this idea for the making of this false claim? A. Yes."

Mrs. Francis Scalise, wife of the appellant, testified at the hearing on the motion that she was with her husband at the meeting with counsel on Sunday evening and she related:

"Q. On Sunday evening, when you were present at the discussion, were you asked your ideas on this? Yes, I would much rather have him to go the pen for 1 or 2 or 2 to 5 than for 7 to 14.

"Q. That was the consensus at that time? A. Yes, but only for that reason.

"Q. Your opinion was that it would be better that way because of the—A. It would be better only for that reason.

"Q. And you were afraid that he might get more? A. Yes, the way the thing worked out."

At the conclusion of the hearing the court commented that the appellant had consulted and been advised by attorneys since October 10, and that in his opinion counsel had made every legal objection and exercised every legal tactic that skilled and able counsel could make on behalf of the appellant. Petitions had been received by the court requesting a suspended sentence, and the petitions acknowledged the guilt of the appellant in that it is stated in such petitions that the money has been returned. The court further stated that in view of appellant's plea of guilty, made after ample time for consideration and upon the advice of his counsel, to the court's mind there was no doubt of his guilt, and that appellant had no defense worthy of consideration by a jury, and that appellant on the witness stand had admitted he committed the act with which he was charged.

It will be seen that the appellant was represented by counsel at every stage of the proceeding, and they were diligent in their efforts. Counsel also laid before the appellant all the factors which in their minds he should be aware of and consider in determining which course he desired to take. After such deliberate consideration on his part and consultation with his wife, his decision was made to enter a plea of guilty, and in that manner dispose of this case and all the other cases in which he was involved in one manner or another. Acting upon this agreement the other matters were disposed of, and appellant was granted additional time before judgment was pronounced so that he might get the benefit of his vacation allowance and thereby secure funds for the support of his family while he was absent.

There appears no question but that the appellant at all times desired to secure a suspended sentence. It was constantly being discussed and efforts made to secure it, but the court was adamant in that regard. Such fact was known to the appellant at the time he entered his plea. There certainly was no surprise,

so far as he was concerned, when the court continued to refuse to consider a suspension of sentence.

We will consider the specifications of error, turning first to that of the court permitting the entry of the names of attorneys Rankin and Acher as associate counsel for the state.

It is incumbent upon the appellant to show wherein the appointment of associate counsel for the state was prejudicial to his rights. There was no trial to be had at the time and none was thereafter held. The hearing was upon a motion. In determination of this appeal we will be limited in that respect to the question of whether or not the court abused its discretion in refusing to grant the withdrawal of the plea. These counsel were associated in other actions then pending to which the appellant was a party, and had been in on the discussions at the time the agreement was reached for the disposal of those actions. They were familiar with the fact situation in such other proceedings. The appellant, at the time of their entry into the matter, stood before the court convicted of the crime with which he was charged by his own admission. We fail to see any prejudice to the appellant from this action of the court.

Considering now the conduct of the hearing on the motion by the court. The motion was addressed to the discretion of the court, and the court has the right to elicit all the facts available which will move its discretion. It is not limited only to the facts put forth by a movent. In this case, the court had been consulted on many occasions by counsel for the appellant, had been advised on the day before the hearing that such a motion would be made, and as the court itself stated had endeavored to consult legal authorities in order to be prepared to consider the matter in accordance with the legal principles applicable thereto. It must be remembered that present counsel for appellant requested the judge to disqualify himself in these words: "Before any argument on this motion, we would like the record to show that the defendant requests that you, Judge William R. Taylor, disqualify yourself in this action, on the grounds and for the reason that you will be called as a witness in the matter con-

tained in the affidavit, and the hearing on this motion, and on the grounds and for the reason that you have personally consulted with the defendant herein, and have expressed an opinion as to his guilt or innocence, and we ask at this time that you disqualify yourself on the ground of actual or implied bias.'' Counsel stated to the court that he made the motion on behalf of himself and his co-counsel personally.

Thus counsel charged the court with bias, actual or implied, upon three grounds: (1) That he would be called as a witness; (2) that he had personally consulted with the defendant; and (3) that he had expressed an opinion as to the guilt or innocence of the defendant.

The court then proceeded to call to the witness stand and have sworn all of the original counsel for the appellant, and examined them in regard to the charges made by present counsel. They were cross-examined by present counsel, and the court itself submitted to cross-examination by present counsel. From this cross-examination certainly nothing appears to indicate any bias on the part of the presiding judge, nor does any appear from the examination of former counsel for the appellant. To our mind the court had been at all times fair and considerate of the appellant's position, and nowhere does it appear that he had made up his mind upon any feature of the case.

It is to this portion of the hearing that the next specification of error is taken, that the court permitted the introduction of irrelevant, incompetent and immaterial matter upon the hearing. To our mind these matters were material, vitally so, in view of the charges leveled at the court by counsel for the appellant. The examination conducted by the court, of each of the original counsel, was directed to the charges made by appellant's present counsel, and while thereafter each was examined by appellant's counsel and by other attorneys there present, no objection was made on behalf of appellant. Whatever facts were developed by such examination were fully explored on cross-examination by appellant's counsel.

Coming then to the contention that the court erred in denying

the motion. In the supporting affidavit, appellant set forth many allegations as grounds for his motion, but his own testimony discloses a complete failure of proof to sustain his contention. He admitted his guilt but wanted to "dicker" further. He had already been granted concessions by the court in accordance with his request. Other causes of action had been disposed of by reason of his plea, and while he was at all times fully aware of the seriousness of the charge pending against him, he did not want to serve any time in prison, but wanted whatever punishment the court imposed to be suspended. At the time he entered his plea of guilty however, he knew he would receive a one-year sentence and that it would not be suspended.

This court has discussed the general legal principles governing withdrawal of pleas many times, very recently in the case of State v. Morgan, Mont., 307 Pac. (2d) 244. No purpose would be served by repeating them here.

To every general rule there are exceptions. In the case of State v. Nance, 120 Mont. 152, 184 Pac. (2d) 554, 561, we discussed such an exception in these words:

"Here the defendant had a tacit understanding with the prosecuting attorney as to the consequences to follow substitution of pleas of guilty for those of not guilty. From such agreement the defendant had a clear understanding as to the sentences to be recommended, and he reaped certain advantages which enabled him to dispose of his establishment and liquor licenses. While this court does not generally encourage the making of bargains with persons charged with crime, it will not lend its assistance to an accused criminal in escaping the obligations of his agreement after accepting the benefits thereof. In this case the defendant will not be assisted by this court in his apparent attempt at double-dealing and stalling tactics. His actions are not such as to merit any unusually favorable consideration by the trial court especially in view of the record.

"It is to be taken into consideration that throughout the proceedings in the district court the appellant had the assistance of able counsel. His chief contention now is that he was misled by

what he terms the erroneous advice of his counsel. But from the record the trial court would be justified in concluding the guilt of the accused, as charged; and this is so in at least two of the cases, regardless of the correctness, or otherwise, of his counsel's interpretation of the law. Under the circumstances of this case we do not feel called upon to resolve the conflicting opinions of defendant's original and present counsel on the legal question involved.''

Here we have a trusted public officer, required under law to supervise the official conduct of all county officers charged with assessing, collecting, safe-keeping, management or disbursement of the public revenues, to see that they faithfully perform their duties, direct prosecutions for delinquencies, require them to make reports and to present their books and accounts for inspection, himself violating his trust by filing a false claim and receiving a sum of money from the public revenues to which he was not by law entitled. He secured counsel, four in number, all able and skilled in the law, and they devoted their sincere efforts in his behalf at all times. There can be no question but that he was well advised as to the seriousness of the charge placed against him, his calling upon the district judge displayed his worry over the outcome. His counsel tried in every manner open to them to secure a suspended sentence for him but they were unsuccessful, and of all this appellant was well aware as shown by his own testimony. Every man guilty of a crime is fearful of the sentence which will be meted out to him, more so one in a position of public honor and trust. Ably represented at every step in these proceedings, endeavoring to work out the matter in the most beneficial way to suit his own convenience, the appellant cannot now be heard to complain.

An additional point has been raised as to whether or not under article III of the Montana Constitution, a defendant in a criminal case can waive trial by jury by entering a plea of guilty.

Under constitutional provisions similar to ours, this contention has been before the court in our sister State of Idaho in Ex parte Dawson, 20 Idaho 178, 117 Pac. 696, 699, 35 L.R.A., N.S.,

1146, wherein after a full discussion of the principal the court stated:

"We think the authorities all hold that 'trial', as used in section 7, art. 1, Const., means an issue of fact—that is, an issue of fact presented by the plea of the accused—in which case, if the offense charged be a felony, a jury cannot be waived, and the court is without jurisdiction to try such issue of fact, and there can be no conviction except upon trial by jury. But, on the other hand, where an accused, with full knowledge of his constitutional right, enters a plea of guilty, and presents no issue of fact for trial, there can be no trial, and the conviction is the accused's admission, and takes the place of a verdict of a jury."

This same result under similar constitutional provisions was reached in the State of Washington in Brandon v. Webb, 23 Wash. (2d) 155, 160 Pac. (2d) 529, 531; there the court stated:

"It is undoubtedly true that under the constitutional provision referred to above, the right of trial by jury may not by legislative of judicial action, be annulled, nor be so impaired, obstructed, or restricted as to make of it a nullity. That does not mean, however, that a trial by jury is imperative and compulsory in every instance, regardless of whether or not the accused by his plea has raised *an issue of fact* triable by a jury. The purpose of the constitutional provision was to *preserve to the accused the right* to a trial by jury as it had theretofore existed; it was not the purpose of the fundamental enactment to render the intervention of a jury mandatory, in the face of the accused person's voluntary plea of guilty to the charge, where no issue of fact was left for submission to, or determination by, the jury.

"In this state a person who has been informed against or indicted for a crime may be convicted in any one of three ways: (1) by admitting in his plea, the truth of the charge; (2) by confession in open court; or (3) by the verdict of a jury accepted and recorded by the court. Rem. Rev. Stat. section 2309. There are, likewise, in this state but three pleas to an indictment or information: (1) guilty; (2) not guilty; and (3) a former judg-

ment of conviction or acquittal of the offense charged. Rem. Rev. Stat. section 2108.

"A plea of guilty has the same effect in law as a verdict of guilty, except that, upon leave of the court, it may be withdrawn and another plea substituted therefor at any time before the rendering of final judgment and sentence thereon. State ex rel. Lundin v. Superior Court, 102 Wash. 600, 174 Pac. 473. See, also, State v. Liliopoulos, 165 Wash. 197, 209, 5 Pac. (2d) 319.

"Such plea is a confession of guilt and is equivalent to a conviction, leaving no issue for the jury, except in those instances where the extent of the punishment is to be imposed or found by the jury. By pleading guilty the defendant admits the acts well pleaded in the charge, waives all defenses other than that the indictment or information charges no offense, and waives the right to trial and the incidents thereof. 22 C.J.S., Criminal Law, section 424, page 655; 14 Am. Jur. 952, Criminal Law, section 272."

It appears clear to us under our constitutional provisions that ██ if a defendant is charged with a felony and desires a trial he shall have one before a jury, and our laws so provide. He may not waive a jury trial in favor of one by the court. However, he may waive trial entirely by entering a plea of guilty, as the appellant has done in this case; in such event he admits the issue of fact and presents nothing to go before a jury.

For the reason that this case involves an exception to the general rule, we have examined and considered the matter with great attention and concern, and we find no abuse of discretion by the trial court. Accordingly the judgment of the lower court is affirmed.

MR. JUSTICES CASTLES and ANGSTMAN, concur.

MR. JUSTICE BOTTOMLY, dissenting.

I dissent.

In this case, this court does not have before it the question of the guilt or innocence of the defendant.

The only question presented by this appeal is:

Did the district court abuse its discretion in refusing to grant defendant's motion to withdraw his plea of guilty, and in lieu thereof, enter the plea of not guilty to the felony charged against him, so that he, the defendant, Leo F. Scalise, could have such charge tried by a jury?

The record discloses that on November 21, 1955, defendant, present before the court in person and by counsel, entered a plea of guilty, and the court fixed December 10, 1955, as the time for pronouncement of judgment.

December 10, 1955, and before pronouncement of judgment, defendant's original counsel withdrew as attorneys in the action. New counsel came into the case representing defendant and made, served and filed defendant's motion to withdraw the plea of guilty and enter a plea of not guilty. The motion was based on the affidavit of defendant, Leo F. Scalise, and the records and files in the case.

No counter-affidavits were filed. The affidavit of defendant sets forth very peculiar proceedings and circumstances from which it can be inferred that defendant had been "brain-washed" into pleading guilty. However, the trial court denied defendant's motion to withdraw his plea.

The Constitution of Montana, art. III, section 23, provides, as far as pertinent hereto, that, *"The right of trial by jury shall be secured to all, and remain inviolate."* The section then makes exception as follows: "but in all civil cases and in *all criminal cases not amounting to felony,* upon default of appearance, or by consent of the parties expressed in such manner as the law may prescribe, a trial by jury may be waived, \* \* \*." Emphasis supplied.

Again, in showing the intent of the drafters, section 23 specifically provides: "In all civil actions and in all criminal cases *not amounting to felony,* two-thirds in number of the jury may render a verdict, \* \* \*." Emphasis supplied.

Section 2 of art. III of the Constitution of the United States of America, provides as far as pertinent here, that: "The Trial

of all Crimes, except in Cases of Impeachment, shall be by Jury; * * *'' By the Sixth amendment, a speedy and public trial by an impartial jury is assured.

The Fourteenth amendment, as far as pertinent here, provides: ''No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.''

The word ''inviolate,'' used in section 23 of art. III, of the Montana Constitution, means not to be violated, unimpaired, sacred, secure against corruption. Webster's New International Dictionary (2d ed.). The wording of this section of article III is simple and easily understood and needs no interpretation.

This guarantees to every person charged with a felony, the right to a trial by jury when desired and requested. The state gives up nothing by allowing the change of plea. By granting such change, the court only sustains the ''sacred'' right of the defendant, and preserves the fundamental law of our Bill of Rights.

This court has repeatedly held that a defendant in a felony case should not be persuaded to make a plea of guilty against his will, and such plea should never be accepted when induced by fear, *persuasion*, promise or *ignorance*. See State ex rel. Foot v. District Court, 81 Mont. 495, 263 Pac. 979. On application to change a plea, all doubts should be resolved in favor of a trial on the merits. As was said in State v. McAllister, 96 Mont. 348, 353, 30 Pac. (2d) 821, 823, ''Here the affidavits were not opposed by counter affidavits, and we must, therefore, assume the truth of everything contained in them.'' Compare State v. Nicholas, 46 Mont. 470, 128 Pac. 543; State v. Dow, 71 Mont. 291, 229 Pac. 402; State v. Carcaras, 104 Mont. 404, 413, 66 Pac. (2d) 774; State v. McBane, 128 Mont. 369, 275 Pac. (2d) 218; 22 C.J.S., Criminal Law, section 421, pages 640, 641. The same general rule is set forth in 14 Am. Jur., Criminal Law, sections 286, 287, page 960, et seq.

I would reverse the judgment and order and remand the cause to the district court for a jury trial on the merits on the defendant's plea of not guilty.

MR. JUSTICE ADAIR:

I concur in the above dissenting opinion of Mr. Justice Bottomly.