STATE, Respondent, *v.* NANCE, Appellant.

No. 8677

Submitted April 23, 1947. Decided May 16, 1947.

184 Pac. (2d) 554

Messrs. Rankin & Acher, of Helena, for appellant. Mr. Rankin and Mr. Acher argued the cause orally.

Mr. Melvin N. Hoiness, Co. Atty., of Billings, Mr. R. V. Bottomly, Atty. Gen., and Mr. Clarence Hanley, Asst. Atty. Gen., for respondent. Mr. Hoiness and Mr. Hanley argued the cause orally.

MR. JUSTICE CHEADLE delivered the opinion of the Court.

Appeal from orders of the two departments of the district court of the thirteenth judicial district, Yellowstone county, denying motions of the defendant for orders vacating judgments of conviction theretofore entered in five criminal actions and permitting defendant to withdraw pleas of guilty therein and to substitute pleas of not guilty.

On December 10, 1945, the county attorney of Yellowstone county filed an information in cause No. 4167, jointly charging the defendant and one Pauline Martin with the illegal sale of intoxicating liquor to four named minors under the age of 21 years. On December 11th, both accused appeared in court with counsel and entered pleas of not guilty to the offense charged, bail for each being fixed at $1,000.

On February 27, 1946, the county attorney filed four informations in causes 4176, 4177, 4178 and 4179, jointly charging the defendant and one Margie Arnett with similar offenses, naming the minors to whom the illegal sales were alleged to have been made. On the same day both of the accused appeared in court with counsel and entered pleas of not guilty to each offense charged, bail for each being fixed at $1,000. On March 16, 1946, the three accused, their counsel, and the county at-

torney appeared in court. On motion of their counsel, and by leave of the court, the defendant here withdrew his pleas of not guilty and entered pleas of guilty to the offenses charged in each of the informations; Pauline Martin withdrew her plea of not guilty and entered her plea of guilty in cause No. 4167; Margie Arnett withdrew her plea of not guilty and entered her plea of guilty in cause No. 4176. On the same date charges against Margie Arnett in causes 4177, 4178 and 4179 were dismissed upon motion of the county attorney. Thereupon the court pronounced judgments that Pauline Martin and Margie Arnett each be punished by confinement in the county jail for six months, and the payment of a fine of $250, the jail sentences suspended upon payment of the fines. Judgments were pronounced against the defendant Nance, as follows: Fines of $500 in causes 4167 and 4176, and $250 each in the three other causes; confinement in the county jail for six months in each of the causes, the last four sentences to run concurrently with the first. Nance thereupon applied for and was granted a thirty-day stay of execution of the jail sentences, conditional upon payment of the fines forthwith and the furnishing of a bond in the amount of $2,500 to guarantee his delivery to the sheriff on or before April 16th, for execution of the jail sentence.

On April 13, 1946, Nance filed motion for an order vacating and setting aside the judgments of conviction and for leave to withdraw his pleas of guilty, and to substitute therefor pleas of not guilty in each of the causes. In support of such motion the defendant filed his affidavit, which, after setting forth his ownership and operation of the Western Bar and Lounge from March 17, 1944, to March 17, 1946, and the employment of Pauline Martin and Margie Arnett as bartenders therein during the months of December, 1945, and February, 1946, declared, so far as is here pertinent, the following:

"That your affiant did not at any time, or at all sell, give away or dispose of intoxicating liquors to any person under the age of 21 years; * * * nor did he cause or permit, approve

or consent to, or have knowledge, express or implied, that any of his agents or servants and particularly the said Pauline Martin, or the said Margie Arnett, had sold, given away or disposed of liquors to minors or persons under the age of twenty-one years or in violation of the liquor laws of Montana; that any violation committed by said Pauline Martin and said Margie Arnett, were committed in the absence of affiant, their employer, without his knowledge, consent or authority, and in violation of his instructions to all of his employees, including· the said Pauline Martin and Margie Arnett;

"That your affiant employed Joseph·P. Hennessey of Billings, Montana, as his attorney, on or about December 8, 1945, and during the period from that date to March 16, 1946, affiant discussed the above cases upon many occasions with his said attorney and was advised that in as much as your affiant was the owner of said premises, known as the Western Bar and Lounge, he was criminally responsible in law, and subject to arrest, prosecution and punishment by fine or imprisonment, or both, in the event any of his employees sold intoxicating liquor in said premises to a person under the age of 21 years, contrary to the laws of the State of Montana, notwithstanding the fact that said sale may have been made in his absence from the place of business and without his knowledge or consent, or authority or even in violation of his instructions; that said affiant was likewise advised by his attorney, Joseph P. Hennessey, that the latter had discussed these cases with Melvin N. Hoiness, the duly elected, qualified and acting County Attorney of Yellowstone County, Montana, and affiant was told that said County Attorney likewise expressed the opinion that such was the law, and that if the facts disclosed that your affiant was the owner of said premises, that said Pauline Martin was an employee at the time and place described in the information in cause 4167, and/or that said Margie Arnett was in his employ at the times and places referred to in the information in causes 4176, 4177, 4178 and 4179, and it further appeared that either of said employees had sold intoxicating liquors to a person

under the age of 21 years in said premises as charged in any of said informations, then and in that event, he, the said affiant was likewise equally guilty as a matter of law; that your affiant was likewise advised by his attorney, that statements had been obtained from the persons named and described in the informations filed in the causes above described, to the effect that said witnesses had purchased intoxicating liquors from said Pauline Martin or said Margie Arnett and evidence that said witnesses were under the age of 21 years, so that the State was prepared to prove beyond a reasonable doubt that your affiant's employees were guilty of the crimes charged in said informations, and that as a matter of law, by reason of their guilt, affiant was likewise guilty;

"That your affiant was not present at the time of the commission of any of the alleged offenses, and had no knowledge or information with respect thereto, save that acquired following the filing of the information."

The affidavit continues to the effect that in entering his plea of guilty the defendant relied upon the advice of his attorney and was unaware that such advice was not in accordance with the law, for which reason he did not voluntarily enter the guilty plea; that he is now advised that the fact of his owning and operating the establishment would only raise a presumption of his guilt because of the illegal sales by his employees; that he has no feeling of moral turpitude or of guilt and was induced to enter his plea of guilty solely by reason of ignorance of the law as to his legal responsibility under the circumstances, and fear induced by the representations that he had no defense under the law if he proceeded to trial under his pleas of not guilty.

According to his affidavit the defendant was unable to procure an affidavit from Pauline Martin because of her absence from the state. Margie Arnett submitted an affidavit in which she sets forth that Nance had specifically instructed her not to sell intoxicating liquors to any persons under the age of

21 years, and that she had never sold any liquor to any person under 21 years of age with Nance's knowledge.

The record contains affidavits of three minors and three police officers, and others. One minor girl, aged 16 at the time, deposed that she had been in the Western Bar on several occasions prior to February 20, 1946, and had been served beer and John Collins drinks and had seen Nance there several times; that on one occasion she requested Margie Arnett to serve her a John Collins whiskey drink but that although Arnett had served her on several occasions before, on this particular occasion she refused because the affiant was under age; "At that time, she admitted to Nance that she was not quite twenty-one and Willard Nance said to affiant, 'You have been coming in here quite often, haven't you?' and affiant said 'Yes.' Then affiant asked Willard Nance if he wouldn't tell Margie to serve her a drink. Affiant does not recall what he said but he went over and talked to Margie and Margie then served affiant a John Collins.'' The affidavit contains the declaration that the affiant was in the Western Bar on February 18th, at which time many young persons came in about the time school closed and occupied the back barroom and made so much noise that the customers up front began to look back and Nance ordered many of them to leave; that many of these people appeared not to be older than 15 years.

One minor boy aged 17 years declared that prior to December 8, 1945, he had been in the Western Bar two or three times and purchased intoxicating liquor; that on that date he entered the Western Bar with four other minors and purchased intoxicating gin and liquor drinks; that the defendant Nance was in the bar on that occasion and also on other occasions when the affiant purchased intoxicating liquor.

The affidavit of another girl aged 16 years declared that on many occasions prior to February 20, 1946, she frequented the Western Bar and was acquainted with the defendant Nance and saw him in his place of business on many occasions and had talked to him there; that she was never refused a drink in the

158

Western Bar; that on February 19th she had four coke high-balls with whiskey; that she often frequented the bar in company with her sister, aged 20, who was served coke highballs, whiskey shots with water and Singapore gin; that she had seen other very young persons in the Western Bar on many occasions.

Joseph P. Hennessey, the attorney who represented Nance at the time of his arrest, and who was present in court at the time the pleas of guilty were entered, declared by affidavit that during the period from December 8, 1945, to March 16, 1946, he discussed these cases with the county attorney upon many occasions and was advised that the persons named in the informations had made statements to the county attorney that they had purchased intoxicating liquors from Pauline Martin and Margie Arnett; "that during the aforesaid period in the discussions with the said Melvin N. Hoiness, County Attorney, the matter of the legal liability of the said Willard Nance was also discussed and while affiant does not believe that said County Attorney attempted in any way to mislead affiant in any way as to the law, said Melvin N. Hoiness did state in effect that in his opinion under the laws of Montana since said Willard Nance was the owner of said premises, known as the Western Bar and Lounge, he was criminally responsible in law, and subject to arrest, prosecution and punishment by fine or imprisonment, or both, in the event any of his employees sold intoxicating liquor in said premises to a person under the age of 21 years, contrary to the laws of the State of Montana, notwithstanding the fact that said sale may have been made in his absence from the place of business and without his knowledge or consent, or authority, or even in violation of his instructions.

"That your affiant was of the same opinion after an examination of the statutes as that expressed by said County Attorney as aforesaid and your affiant advised the said Willard Nance that inasmuch as he was the owner and operator of said premises known as the Western Bar and Lounge and the em-

ployer of said Pauline Martin and Margie Arnett, he was criminally responsible in law and subject to arrest, prosecution and punishment by fine or imprisonment, or both, in the event they or any of his employees sold intoxicating liquor in said premises to a person under the age of 21 years, contrary to the laws of the State of Montana, notwithstanding the fact that said sale may have been made in his absence from the place of business and without his knowledge or consent or authority or even in violation of his instructions.''

The affidavit of Melvin N. Hoiness, county attorney of Yellowstone county, is as follows:

''That he is the duly elected, qualified and acting County Attorney of Yellowstone County, Montana, and, as such officer, filed the information in the above entitled causes; that the filing of the first information in Cause No. 4167 was based upon a complaint by Police Officers of the alleged sale of intoxicating liquors to certain minors therein named; that Willard Nance was actually present at the time of the commission of the offense as appears by the affidavits of the officers and one of the minors attached hereto and made a part hereof; that information in Causes No. 4176, 4177, 4178 and 4179 were filed as a result of an investigation made by John K. Donahue, Chief Probation Officer of Yellowstone County, Montana, who obtained affidavits and statements from many minors ranging from fifteen years of age to nineteen years of age to the effect that they had on numerous occasions purchased intoxicating liquors consisting of coke highballs, whiskey shots with water, Singapore Gins, John Collins and straight whiskies in the Western Bar operated by Willard Nance and located at 18 North 28th Street, Billings, Montana; that in the investigation of the matter, your affiant obtained statements corroborating the statements obtained by John K. Donahue to the effect that minors frequented the Western Bar and it was common knowledge among them that they could buy intoxicating liquors without question regardless of their age; that many of the minors stated that they knew Willard Nance, the proprietor, and that

they had seen him in and about the place while they were being served. In one instance a minor stated that she had discussed with Willard Nance the purchase of intoxicating liquor because the waitress had refused to serve her on that occasion although she had been served on many previous occasions, all of which more particularly appears from the Affidavit of Shirley Jean Halverson, attached hereto and made a part hereof;

"That your affiant was preparing abatement proceedings against the Western Bar based on the affidavits and the statements of at least twenty-five minors; that the common reputation of the Western Bar was such that it was frequented by minors who could purchase intoxicating liquors without question at any time in that place of business; that your affiant discussed all of the pending cases with Mr. Joseph P. Hennessey, an attorney-at-law of Billings, Montana, who was then representing the defendants in the above entitled causes; that in this discussion your affiant advised Mr. Hennessey generally as to the facts which the State expected to prove in the trial of said causes and particularly that in Cause No. 4167 the State could establish that Willard Nance was present in his place of business at the time of the offense and that in Cause No. 4177, the State had a positive witness to the fact that Willard Nance consented to the serving of intoxicating liquor to a minor child and that in the other causes the State expected to prove that Willard Nance was present and had knowledge, either express or implied, that minors were frequenting his place of business and buying intoxicating liquors; that Nance's attorney, on many occasions, wanted to know the attitude of your affiant in the event his client entered a plea of guilty. There was never any solicitation requesting that Willard Nance enter a plea of guilty. Mr. Hennessey was advised however that if Willard Nance entered a plea of guilty, your affiant would recommend to the Court that the jail sentences run concurrently with the first sentence imposed and that the fines be the minimum except in two cases, and in considering the

matter there was also discussed the disposition in the causes against Pauline Martin and Margie Arnett. Your affiant is informed and believes and therefore alleges that Pauline Martin had left the jurisdiction of the Court and did not intend to appear. She was on bail of One Thousand ($1,000.00) Dollars and her trial was set and your affiant advised Mr. Hennessey that if he entered a plea of guilty on her behalf, your affiant would recommend a minimum fine in her case with a suspension of the jail sentence. There were four cases pending against Margie Arnett and your affiant advised Mr. Hennessey that in the event of a plea of guilty, your affiant would recommend the granting of minimum sentences in the cases pending against Margie Arnett. In discussing the matter with Mr. Hennessey, your affiant was advised that Mr. Nance was negotiating a sale for the Western Bar and your affiant advised Mr. Hennessey that in the event the cases were disposed of, such abatement proceedings would not be filed. Your affiant was informed that the sale was allegedly being made to new owners who would conduct the business in accordance with the law; that Willard Nance talked with affiant immediately after the sentences had been imposed and requested that affiant remove any objections to the sale and transfer so that the State Liquor Control Board would approve the sale and transfer; that your affiant advised the State Liquor Control Board that he had no objection to the sale and transfer provided that the place would hereafter be conducted as a law abiding place of business.

"In discussing the cases, prior to trial, with Mr. Hennessey, your affiant did not attempt to mislead Mr. Hennessey as to the law or the facts involved in all of the cases. The general situation with respect to the law was discussed by your affiant and Mr. Hennessey but your affiant did not advise Mr. Hennessey that Nance could be convicted regardless of his presence or absence or express or implied connection with the sales of intoxicating liquor and Mr. Hennessey understood the situation and was not misleading to the prejudices of Mr. Nance.

"The pleas of guilty were entered in all cases by Mr. Nance

with some intimation that affiant would not insist upon the maximum penalty in each case and Mr. Nance was not misled in this respect. Mr. Nance withdrew a plea of Not Guilty and personally entered a plea of Guilty with full knowledge of all the facts and immediately paid the fines imposed upon him. In this respect, he was protecting his investment against a pending abatement proceedings, thus enabling him to dispose of his business for several thousand dollars; he was taking into account the minimum sentence to be recommended in his own case and in the case of his employees;

"That in this situation, it would be travesty on justice to permit the defendant, Willard Nance, to enter a plea of Guilty with full knowledge of the situation and then after the jury had been dismissed, and he had paid his fine, and partly satisfied the judgment and arranged for the alleged sale of his business, to then come before the Court with a specious plea that he had been misinformed by his attorney and therefore desired to withdraw his plea and enter a new plea of Not Guilty to the offenses. The State was prepared to go to trial. The subpoenas had been issued and Willard Nance knew that on his plea of guilty, he would be confronted with a jail sentence of at least six months. Affiant denies specifically and categorically that [the] statements in the Affidavit of Willard Nance that he, the said Willard Nance, was not present at the time of the commission of any of the alleged offenses and had no knowledge or information with respect thereto. The first cause against Willard Nance was filed on December 11th, 1945, and notwithstanding that this case was pending in Court, his place of business continued to allegedly sell intoxicating liquors to minors up to the date the five informations were filed against him.

"Your affiant, at this time, is unable to furnish an Affidavit by Betty Lee who was born at Baker, Montana, on July 24th, 1927, and who was available for the trial of said causes and who stated to the Chief Probation Officer and to your affiant in the presence of Captain Gerald B. Smith of Billings

Police Department that she frequented the Western Bar and had been in it at least one hundred times since July, 1945, and that most of the time she had something to drink—beer and coke high mixed with whiskey; that affiant alleges that the Western Bar was so openly and notoriously conducted that the defendant, Willard Nance, has no way of knowing whether or not he was present during any of the alleged violations and the State does have positive proof that he was present and either had, or should have had knowledge of the fact that minors ranging from fifteen years of age to nineteen years of age were frequenting his place of business in crowds and gangs, all without any attempt on his part to recognize any of the provisions of the Liquor Laws of the State of Montana. Further affiant sayeth not.''

Certain other affidavits and counter-affidavits were filed by both parties, which need not be detailed. The defendant, although present in court when the motion was argued and submitted, did not offer oral testimony.

The affidavits and counter-affidavits, aside from those of the county attorney and Mr. Hennessey, in conjunction with the guilty pleas of Pauline Martin and Margie Arnett, establish as a fact various illegal sales of intoxicating liquors to minors. They also raise an issue of fact as to whether Nance was in his place of business on at least two occasions when such sales were made, and whether he directed or knowingly permitted one such sale. The record is sufficient to warrant a conclusion by the trial court that defendant in fact was present on such occasions, and directed or permitted at least one such illegal sale. The accounts of the conversations between Nance and his counsel, and of the advice by the latter to the former, obviously were not and could not be disputed. The affidavit of the county attorney disputes certain of the assertions of Mr. Hennessy, particularly with regard to any statement by the former as to the guilt of the defendant regardless of his knowledge of or consent to illegal sales by his employees, or contrary to his instructions. Defendant's contention is, of

course, that because of his counsel's erroneous advice with regard to the question of his guilt, he was misled and that, consequently, his plea of guilty was not voluntary.

The statute authorizing a court to permit withdrawal of a plea of guilty is section 11909, Revised Codes, which provides in part: '' * * * The court may, at any time before judgment, upon a plea of guilty, permit it to be withdrawn, and a plea of not guilty substituted.''

The well established and almost universal rule is that the granting or refusal of permission to withdraw a plea of guilty and substitute a plea of not guilty rests in the discretion of the trial court, and is subject to review only where an abuse of discretion has been shown. 22 C. J. S., Criminal Law, sec. 421, p. 639; State v. McAllister, 96 Mont. 348, 30 Pac. (2d) 821; State ex rel. Foot v. District Court, 81 Mont. 495, 263 Pac. 979. Each case of necessity must depend upon its own facts and circumstances, and no hard and fast rule can be laid down that will fit every case. 22 C. J. S., Criminal Law, sec. 421, p. 640; State v. McAllister, supra. And in this jurisdiction it has been held that the right may be exercised after judgment has been pronounced. State ex rel. Foot v. District Court, supra; State v. McAllister, supra. The cases last cited are authority for the rule that a change of plea will ordinarily be permitted if it fairly appears that the defendant was in ignorance of his rights and the consequences of his act, or if influenced unduly and improperly either by hope or fear in making it, or if it appears that the plea was entered under some mistake or misapprehension. See also State v. Nicholas, 46 Mont. 470, 128 Pac. 543; State v. Dow, 71 Mont. 291, 229 Pac. 402.

It is to be noted that the first information was filed on December 10, 1945, and the others on February 27, 1946. Pleas of not guilty were not withdrawn until March 16th, shortly before the cases were set for trial and after subpoenas for witnesses had been issued. Fines assessed against the defendant were paid and stay of execution of the jail sentences for

30 days granted on March 16th. It was not until April 13, 1946, that the motions involved were filed. In the meantime Nance had disposed of his business (presumably on March 17, 1946, as appears from his affidavit) and had transferred his state beer and liquor licenses. Such disposition of his establishment and licenses was presumably made possible only by agreement of the county attorney to withhold abatement proceedings provided the cases were disposed of on the pleas of guilty, and to consent to transfer of the licenses to a person who furnished assurance that he would comply with the liquor laws. Between the dates of the entry of the pleas of guilty and the filing of the motions under consideration, the jury panel was discharged, and at least one witness left the jurisdiction.

The county attorney, as appears by his affidavit, had agreed, in the event of entry of pleas of guilty, to make certain recommendations to the court as to sentences to be imposed, not only as against Nance, but also as to the other two defendants. The sentences subsequently imposed were in accordance with such recommendations. It thus appears that the defendant was in no way misled in that regard, and changed his pleas with full understanding as to the consequences.

The generally accepted rule is that in order to receive favorable consideration an application to withdraw a plea of guilty should be made within a reasonable time. As is said in 22 C. J. S., Criminal Law, sec. 421, p. 644: ''An application to withdraw a plea of guilty should be made within a reasonable time. The fact that the motion for leave to withdraw is presented without undue delay is, in connection with other matters, accorded favorable consideration in arriving at the conclusion that it is proper or necessary to grant the motion; but where there is considerable delay in making the motion, the discretion of the court should not be exercised in favor thereof unless there is some substantial reason therefor; and, under the circumstances, it may not be an abuse of discretion to refuse a request to withdraw not made until after

the jury has been discharged for the term and the granting of which would mean that the case would go over to the next term of court, even though the request, if made prior to the discharge of the jury, would have been readily granted.'' And see cases cited in notes. Under the circumstances of this case it does not appear that the motion was made within a reasonable time.

Here the defendant had a tacit understanding with the prosecuting attorney as to the consequences to follow substitution of pleas of guilty for those of not guilty. From such agreement the defendant had a clear understanding as to the sentences to be recommended, and he reaped certain advantages which enabled him to dispose of his establishment and liquor licenses. While this court does not generally encourage the making of bargains with persons charged with crime, it will not lend its assistance to an accused criminal in escaping the obligations of his agreement after accepting the benefits thereof. In this case the defendant will not be assisted by this court in his apparent attempt at double-dealing and stalling tactics. His actions are not such as to merit any unusually favorable consideration by the trial court especially in view of the record.

It is to be taken into consideration that throughout the proceedings in the district court the appellant had the assistance of able counsel. His chief contention now is that he was misled by what he terms the erroneous advice of his counsel. But from the record the trial court would be justified in concluding the guilt of the accused, as charged; and this is so in at least two of the cases, regardless of the correctness, or otherwise, of his counsel's interpretation of the law. Under the circumstances of this case we do not feel called upon to resolve the conflicting opinions of defendant's original and present counsel on the legal question involved.

We have carefully considered all of the arguments advanced by appellant, and the authorities cited by him. The cases

relied upon differ from this in that in none of them were counter-affidavits presented to raise issues of fact.

We hold that no abuse of discretion by the trial court has been shown. Accordingly, the orders and judgments appealed from are affirmed.

Mr. Chief Justice Adair and Associate Justices Choate, Angstman, and Metcalf, concur.

Rehearing denied June 30, 1947.