No. 87-287

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

STATE OF MONTANA,

          Plaintiff and Respondent,

  -vs-

ROBERT DARRELL MARTZ,

          Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Sixth Judicial District,
            In and for the County of Park,
            The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Larry Jent, Bozeman, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Betsy Brandborg, Asst. Atty. General, Helena
        Wm. Nels Swandal, County Attorney, Livingston,
        Montana;  Daniel B McGregor, Deputy

_____

                  Submitted on Briefs:  June 30, 1988

                      Decided: August 5, 1988

Filed: AUG 5 1988

_____
              Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant Robert Martz appeals his plea of guilty and subsequent conviction of tampering with physical evidence, a felony, in violation of § 45-7-207, MCA. Martz plead guilty to the charge on January 19, 1987, in the Sixth Judicial District, Park County, in accordance with a plea agreement and was released on his own recognizance until the sentencing hearing, scheduled for February 2, 1987. Martz was arrested for various misdemeanor crimes before sentencing. At the sentencing hearing, the District Court refused the suspended sentence recommended by the State. Martz received a sentence of four years in prison. We affirm.

Defendant raises four issues on appeal:

1. Whether the District Court properly denied defendant's motion for new counsel.

2. Whether defendant received effective assistance of counsel.

3. Whether the District Court properly accepted defendant's guilty plea to the felony charge of tampering with physical evidence.

4. Whether the defendant was entitled to withdraw his guilty plea following the District Court's rejection of the plea agreement.

At 1:10 a.m. on November 1, 1986, Robert Martz was arrested in Livingston, Montana, for obstructing a police officer. While being booked, the police officer discovered in Martz's pocket a cellophane packet containing a green substance. Martz attempted to wrest the packet from the police officer and a struggle ensued. Martz gained control and swallowed the packet. He was then charged by information with the felony of tampering with physical evidence, in

2

violation of § 45-7-207(1)(a), MCA. The defendant later claimed that he was intoxicated at the time of arrest.

Defendant appeared initially on November 14, 1986, before Park County District Court Judge Byron Robb. At the appearance Public Defender Dan Yardley was appointed counsel to Martz. Judge Robb told defendant that if Martz negotiated a plea agreement with the State, according to § 46-12-204, MCA, the court had no duty to accept a recommended sentence and was not bound to allow any guilty plea withdrawal. Defendant was then arraigned on November 21, 1986, and plead not guilty to the counts charged in the information. On December 29, 1986, Yardley filed a motion to disqualify Judge Robb for prejudice against the defendant. Judge Robb denied the motion on the grounds that (1) the defendant failed to submit an affidavit in support of the motion, as required by § 3-1-805, MCA, and (2) there was no evidence of prejudice by the District Court.

Martz filed a motion pro se for dismissal of Yardley as his counsel claiming Yardley was incompetent in the area of criminal law. The motion was filed also on the grounds of prejudice and conflict of interest claiming Dan Yardley's brother Jack had prosecuted Martz previously, causing Jack to adversely influence Dan's counseling.

The District Court denied the motion after holding a hearing sua sponte to discuss defendant's reasons for his motion. Judge Robb stated there was no prejudice simply because Dan Yardley and Jack Yardley were brothers and Jack Yardley had prosecuted Martz in a completely separate action. In addition, the District Court also appointed Jack Yardley to act as co-counsel for Martz.

On January 16, 1987, the State and Martz negotiated a plea agreement in which defendant would plead guilty to the charges of tampering with physical evidence in exchange for a

3

recommendation to Judge Robb by the State of a four-year suspended sentence.

Martz entered a change of plea on January 19, 1987, after a detailed colloquy between Judge Robb and Martz. The District Court informed the defendant of his right to an attorney and inquired as to whether he was satisfied with the representation. The District Court addressed the right to jury trial, the maximum penalty for the crime, and the charges filed. After accepting Martz's guilty plea, the District Court directed that defendant be released on his own recognizance until sentencing.

On January 24, 1987, prior to the sentencing hearing, defendant was arrested and charged with several misdemeanors, including theft and resisting arrest.

Sentencing was held February 2, 1987. After inquiring into the crimes charged to defendant while on his own recognizance, Judge Robb explained that he did not think a suspended sentence was proper under the circumstances and sentenced defendant to four years in the Montana State Prison.

The first issue brought forth on appeal is whether the District Court properly denied appellant Martz's request for new counsel. Appellant claims that Dan Yardley is (1) incompetent in the field of criminal law, and (2) was prejudiced in his representation because he was unduly influenced by his brother Jack, who prosecuted Martz previously. In the hearing held sua sponte by Judge Robb, the defendant was informed that Dan Yardley had been a practicing attorney for thirty years and had handled criminal cases in the past. He was therefore regarded as competent counsel.

Judge Robb also addressed the complaints of prejudice. According to the court, Jack Yardley had been employed in the past as both county attorney and public defender and

4

understood well "representing people on both sides of the table." Prejudice and conflict of interest would be present only if Jack Yardley's prosecution of Martz and the charges at issue overlapped. The District Court denied the motion because the proceedings were entirely separate.

It is within the sound discretion of the trial court to rule on the substitution of counsel. Absent a showing of abuse of that discretion, the decision will not be overturned. State v. Long (1983), 206 Mont. 40, 45, 669 P.2d 1068, 1071, citing Good v. United States (9th Cir. 1967), 378 F.2d 934, 935.

When considering a motion for substitution of counsel, the trial court must inquire adequately into the complaint of the defendant and must discover whether the conflict was so great that it resulted in a total lack of communication. Brown v. Craven (9th Cir. 1970), 424 F.2d 1166; United States v. Mills (9th Cir. 1979), 597 F.2d 693. The District Court discovered that although Martz and Dan Yardley did not have a "meaningful relationship," they had discussed the case at length. Morris v. Slappy (1983), 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610. Martz charges that Yardley gave little encouragement of winning the case. But the court found that this was evidence that Yardley and Martz had communicated and was sufficient to warrant retaining Yardley as Martz's counsel. We hold that the District Court properly denied the motion for substitution of counsel.

Issue two is whether the defendant received effective assistance of counsel from Dan Yardley and Jack Yardley. Appellant claims that his case was prejudiced because Dan and Jack Yardley were brothers and Jack would influence Dan into giving poor representation. Also, Jack Yardley was his attorney now even though Martz had been prosecuted by him before.

5

The court found no merit to the accusation that Dan Yardley's representation was insufficient. Martz himself admitted at the change of plea proceedings that he was not dissatisfied with his attorney. The District Court inquired into the effectiveness of counsel:

> The Court: And you have had some question about Mr. Yardley's ability or competency to advise you concerning the matter, do you feel satisfied at this time with his services to you?
>
> Mr. Martz: Yes.
>
> The Court: And has he in fact gone over and discussed with you the written agreement here, the acknowledgement of rights?
>
> Mr. Martz: Yes.
>
> The Court: Do you feel that you do understand it all right?
>
> Mr. Martz: Yes.
>
> The Court: Any questions that you would have about it?
>
> Mr. Martz: None.

Appellant now claims that he was prejudiced because his counsel failed to file an affidavit with the motion for disqualification of Judge Robb and failed to investigate all possible defenses. However, we held in State v. Forsness (1972), 159 Mont. 105, 110, 495 P.2d 176, 178, and State v. Rose (1980), 187 Mont. 74, 89, 608 P.2d 1074, 1082:

> Claimed inadequacy of counsel must not be tested by a greater sophistication of appellate counsel, nor by that counsel's unrivaled opportunity to study the record at leisure and cite different tactics of perhaps doubtful efficacy. Success is not the test of efficient

6

> counsel, frequently neither vigor, zeal,
> nor skill can overcome the truth.

Martz's own words show that the assistance of counsel was sufficient.

Appellant also contends that Jack Yardley, who was appointed co-counsel after Judge Robb denied the motion, could not adequately defend Martz because Yardley had previously prosecuted him. Appellant relies heavily on In Re Petition of Lucero (1972), 161 Mont. 136, 504 P.2d 992, in which this Court held there was prejudice between the defendant and his attorney where the attorney had originally filed the charges in the same case as the acting deputy county attorney. But here, there is no prejudice. Jack Yardley's prosecution of Martz was a completely separate case from the one at issue. In Petition of Pepperling (1973), 162 Mont. 524, 525, 508 P.2d 569, 570, it was stated that:

> It is not the law that the one-time prosecution of a defendant by a former county attorney forever prohibits that attorney from defending that individual on a separate and distinct criminal charge.

Where the District Court found no prejudice, we hold that Jack Yardley was properly appointed as co-counsel for appellant Martz, and that Martz received effective assistance of counsel.

Issue three is whether the District Court properly accepted defendant's plea of guilty to tampering with physical evidence. Section 46-16-105, MCA, provides that:

> (1) Before or during trial, a plea of guilty may be accepted when:
>
> (a) the defendant enters a plea of guilty in open court; and

7

> (b) the court has informed the defendant of the consequences of his plea and of the maximum penalty provided by law which may be imposed upon acceptance of such plea.

The plea given, according to § 46-16-105, MCA, must be a voluntary and intelligent choice after the defendant has heard defense alternatives open to him as affirmatively disclosed by the record. State v. Lance (1982), 201 Mont. 30, 651 P.2d 1003; Schantle v. Crist (1980), 188 Mont. 176, 612 P.2d 673; Yother v. State (1979), 182 Mont. 351, 597 P.2d 79.

Appellant argues that the court did not adequately inform him of his alternatives to a guilty plea and, therefore, prevented him from making a voluntary and intelligent choice. However, in the initial appearance by Martz on November 14, 1986, Judge Robb informed Martz that if he made a plea bargain agreement with the State, the court was not bound by the recommended sentence, nor was the court bound to allow the defendant to withdraw the guilty plea. Also, the colloquy between Judge Robb and Martz demonstrates that the appellant made a well-informed decision:

> The Court: All right. In regards to the matter, Mr. Martz, I want to try to make certain you do understand your rights concerning the matter. I had previously set the case for a jury trial on February 2, which is about two weeks away. And of course notwithstanding anything that has occurred up to this time you are entitled to that jury trial to determine your guilt or innocence in this case if you want, you are aware of that?
>
> Mr. Martz: Yes.
>
> The Court: In the event of a jury trial, Mr. Martz, you understand, of

8

course, it is up to the jury alone to decide your guilt or innocence and not me?

Mr. Martz: Yes.

After the appellant entered a plea of guilty, the court continued its colloquy:

The Court: . . . I previously advised you [at the initial appearance] of the penalty prescribed by our State law, and I would readvise you, Mr. Martz, that that, of course, is up to ten years in the State Prison or a fine of up to $50,000.00 or both, you are aware of that possible penalty still?

Mr. Martz: Yes.

The Court: And in the event I did not accept or approve the plea bargain agreement you realize that possible penalty could still be imposed?

Mr. Martz: Yes.

Therefore, appellant was informed of his constitutional rights and made aware of the possible alternative pleas and their consequences.

The appellant contends that the foregoing colloquy was not sufficient. Martz claims that he was unaware of § 45-2-203, MCA, which allows the court to take into consideration the defense of intoxication, where the existence of a mental state is an element of the offense. According to appellant, in order for him to make a voluntary and intelligent decision, the court must inform him of all available defenses. However, in State v. Day (1981), 195 Mont. 151, 155-156, 635 P.2d 568, 571, we held that:

A discussion of defense strategy goes beyond the realm of trial court duty. If trial courts had to discuss potential defenses with an accused, the judge

9

> would have to advise the accused regard-
> ing potential constitutional challenges,
> as well as affirmative defenses existing
> under statutes. These responsibilities
> are vested in defense counsel and not in
> the trial judge.

Here, the District Court informed Martz of his consti-
tutional rights, the consequences of a guilty plea, the
possible maximum penalty involved, and that the court could
not involve itself in the plea agreement and was not obligat-
ed to accept the recommended sentence. This is sufficient
under § 46-16-105 and fulfills the requirements for a volun-
tary and intelligent plea.

The last issue is whether the defendant was entitled to
withdraw his plea of guilty following the District Court's
rejection of the recommended sentence. Review of a motion to
withdraw a guilty plea requires the consideration and balanc-
ing of relevant factors:

> (1) the adequacy of the interrogation
> by the District Court of the defendant
> at the entry of the guilty plea as to
> the defendant's understanding of the
> consequences of his plea, . . . and (3)
> the fact that the defendant's plea was
> apparently the result of a plea bargain
> in which the guilty plea was given in
> exchange for dismissal of another charge
> . . .

State v. Huttinger (1979), 182 Mont. 50, 54, 595 P.2d 363,
366.

We have already established that the inquiry by the
trial court was sufficient, that the plea was a result of a
plea bargain agreement, and also that the defendant fully
understood the circumstances and consequences of making the
guilty plea.

> . . . the granting or refusal of permis-
> sion to withdraw a plea of guilty and

10

substitute a plea of not guilty rests in the discretion of the trial court and is subject to review only where an abuse of discretion has been shown.

State v. Nance (1947), 120 Mont. 152, 164, 184 P.2d 554, 560; State v. Doty (1977), 173 Mont. 233, 566 P.2d 1388, 1930. We rely on the discretion of the trial court in denying the attempted withdrawal of the guilty plea.

Appellant contends that § 46-12-204, MCA, which lists the requirements of plea bargains, is unconstitutional. Section 46-12-204 provides:

(1) The defendant shall enter a plea of guilty or not guilty to the indictment, information, or complaint. If the defendant refuses to plead to the indictment, information, or complaint, a plea of not guilty must be entered.

(2) The court may refuse to accept a plea of guilty and shall not accept the plea of guilty without first determining that the plea is voluntary with an understanding of the charge.

(3) (a) A plea bargain agreement is an agreement between a defendant and a prosecutor that in exchange for a particular plea the prosecutor will recommend to the court a particular sentence. A judge may not participate in the making of, and is not bound by, a plea bargain agreement. If a judge does not impose a sentence recommended by a prosecutor pursuant to a plea bargain agreement, the judge is not required to allow the defendant to withdraw a plea of guilty.

(b) Before a judge accepts a plea of guilty, he must advise the defendant:

(i) of all the provisions of subsection (3)(a);

11

(ii) of the punishment as set forth by statute for the crime charged;

(iii) that prior to entering a plea of guilty, the defendant and his counsel should have carefully reviewed Title 46, chapter 18, and considered the most severe sentence that can be imposed for a particular crime; and

(iv) that the judge may impose any sentence allowed by law.

Appellant alleges that because the judge would not allow him to withdraw his guilty plea after rejecting the recommended sentence, he deprived defendant of his constitutional rights. It is understood that defendant waives certain constitutional rights by pleading guilty, among those the right to trial and the right against compulsory self-incrimination. Boykin v. Alabama (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. If the defendant makes a voluntary and intelligent plea, he knowingly waives these constitutional rights, regardless of whether or not the judge accepts the recommendation of the State. Where there has been a proper colloquy regarding the defendant's rights and liabilities of a guilty plea, where he has been informed of his constitutional rights, where the defendant is aware that he is giving up those rights, and where the plea bargain agreement is clear as to its limitations, then the judge does not have to accept a guilty plea withdrawal attempt. Section 46-12-204, MCA, is not unconstitutional.

Next the appellant argues that the trial court rejected the plea agreement and, therefore, the plea of guilty itself. However, the judge accepted the plea of guilty in this case, but rejected the recommended sentence by the State. Section 46-12-204, MCA, clearly states that the judge does not have

12

to accept a recommendation by the State and does not have to allow a withdrawal of the guilty plea.

The language in the Federal Rules of Criminal Procedure, Rule 11(e) is similar to § 46-12-204, MCA. Under Rule 11(e)(1)(B) the government can make a recommendation with the understanding that such recommendation is not binding on the court. In interpreting Rule 11(e), the Ninth Circuit Court of Appeals, in United States v. Henderson (9th Cir. 1977), 565 F.2d 1119, held that a judge could accept the plea of guilty and reject the recommendation by the State without being bound to allow withdrawal of the plea.

The District Court in the case on appeal, accepted the plea of guilty, but rejected the recommended sentence. According to the District Court, because Martz had committed a series of misdemeanors while on his own recognizance, he was not worthy of the prosecution's recommended sentence. "[I]t is the sole province of the trial court to determine whether a motion to withdraw a guilty plea should be granted." In re Matter of Hardy (1980), 188 Mont. 506, 509, 614 P.2d 528, 531. On these grounds the court properly denied the motion to withdraw the guilty plea.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

13