No. 94-112

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

CITY OF HELENA,

     Plaintiff and Respondent,

  v.

CHARLES LEE REYNOLDS, JR.,

     Defendant and Appellant.

FILED

APR 4 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

        Charles E. Petaja, Helena, Montana

       For Respondent:

        Honorable Joseph P. Mazurek, Attorney General;
        Paul Johnson, Assistant Attorney General, Helena,
        Montana

        Robert Wood, Assistant City Attorney, Helena,
        Montana


Submitted on Briefs:  March 2, 1995

Decided: April 4, 1995

Filed:

_____
              Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Charles Lee Reynolds, Jr., appeals his conviction of resisting arrest, in violation of § 45-7-301, MCA, following a jury trial in the First Judicial District Court, Lewis and Clark County. We affirm.

The issues are:

1. Did the District Court err in failing to dismiss the resisting arrest charge *sua sponte?*

2. Did the District Court err in its administration of the trial?

3. Was Charles denied effective assistance of counsel?

4. Did the District Court err in sentencing Charles?

On July 30, 1993, Helena Police Officers Brett Holling and Jerry McGee were dispatched to a disturbance at the home of Charles and Robin Reynolds. Gordon Eslick, a civilian passenger, accompanied Officer Holling to the scene. When the officers arrived at the Reynolds residence, they heard loud voices coming from inside the house. Officer Holling knocked at the front door but nobody responded. Holling went to an open window and called to the occupants. Charles then came to the door and voluntarily exited the house. Charles stood in the front yard with Officer McGee while Officer Holling entered the residence and spoke with Robin.

Officer Holling described Robin as "hysterical." While he did not observe any physical signs of abuse, he stated she was very upset. After a short discussion with Officer Holling, Robin signed a complaint of domestic abuse against Charles.

Officer Holling exited the house and proceeded down the front steps. He informed Charles that he was under arrest for domestic abuse. Charles faced the house and placed his hands behind his back. Officer Holling secured a handcuff to Charles' left wrist, grasped his right wrist, and attempted to complete the handcuffing procedure.

At this point the witnesses' stories vary. Officer Holling, Officer McGee, and Eslick testified that Charles pulled his right arm away and swung it around the left side of his body in a circular motion. Although both Officer Holling and Officer McGee were located behind Charles, they both testified that they interpreted his conduct as an aggressive gesture and as an attempt to resist arrest. Both officers testified that, as he swung his right arm he said something like "you are not going to arrest me."

After Charles swung his right arm, Officer Holling took him to the ground. Officer McGee immediately came to Officer Holling's aid and assisted in restraining Charles. The officers completed the handcuffing procedure and transported Charles to the police station for processing.

Charles claims that he did not attempt to strike either of the officers. Rather, he argues that pulling his arm away was a reflex reaction to Officer Holling's "wrenching" on his shoulder. He claims that Officer Holling pulled his arm too hard and it caused him substantial pain. His arm movement, he argues, was merely an involuntary reaction to relieve the pain.

On September 20, 1993, Charles was found guilty of domestic abuse and resisting arrest in the Helena City Court. Charles appealed his conviction *denovo* to the First Judicial District Court of Lewis and Clark County. On January 31, 1994, a jury found Charles guilty of resisting arrest. The domestic abuse charge was dismissed following the State's case-in-chief. Charles appeals his conviction and the sentence imposed. We affirm.

Issue 1

Did the District Court err in failing to dismiss the resisting arrest charge *sua sponte?*

Charles did not move the District Court to dismiss the resisting arrest charge after the State's case-in-chief or at the conclusion of the trial. However, the District Court may dismiss a case upon its own motion if it finds that there is insufficient evidence to support a conviction. Section 46-16-403, MCA, states, in relevant part:

> When, at the close of the prosecution's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant.

No dismissal is warranted if any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could conclude that the essential elements of the crime had been proven beyond a reasonable doubt. We will not overturn the District Court's decision not to dismiss a charge absent an abuse of

discretion.   State v. Haskins (1992), 255 Mont. 202, 841 P.2d 542;
State v. Laverdure (1990), 241 Mont. 135, 785 P.2d 718.

Section 45-7-301, MCA, sets out the elements of resisting
arrest as follows:

> (1) A person commits the offense of resisting arrest if he knowingly prevents or attempts to prevent a peace officer from effecting an arrest by:
> (a) using or threatening to use physical force or violence against the peace officer or another; or
> (b) using any other means which creates a risk of causing physical injury to the peace officer or another.

> (2) It is no defense to a prosecution under this section that the arrest was unlawful, provided the peace officer was acting under color of his official authority.

Charles argues that the arrest did not comply with § 46-6-312, MCA,
which sets forth the manner in which warrantless arrests are to be
made. Charles claims that because the officers did not follow the
criteria established in § 46-6-312, MCA, they were not acting under
color of authority.

We reject this argument for two reasons. First, the State
presented sufficient evidence by which a jury could find that the
officers did comply with § 46-6-312, MCA. The officers testified
that they identified themselves, that they informed Charles that he
was under arrest and that the charge was domestic abuse. This is
all that § 46-6-312, MCA, requires.

Second, we conclude that law enforcement officers need not
necessarily comply with the requirements of § 46-6-312, MCA, in
order to be acting under color of authority. Both officers were
dressed in official Helena Police Department uniforms and identi-
fied themselves as police officers. These acts alone are suffi-

5

cient to establish that the officers acted under color of authority. See Florida v. Shipman (Fla. Ct. App. 1979), 370 So.2d 1195. Compliance with § 46-6-312, MCA, addresses the lawfulness of the arrest, not whether the officers acted under color of authority. Therefore, regardless of whether or not the officers complied with § 46-6-312, MCA, a resisting arrest charge is proper because the officers acted under color of authority.

Next, Charles challenges the sufficiency of the evidence concerning his mental state. He claims that he did not act "knowingly" as required by § 45-7-301(1), MCA. Rather, Charles insists that his arm movement was a reflexive reaction to the pain caused by Officer Holling's handcuffing procedure.

Conversely, the State presented testimony from Officer McGee, Officer Holling and Eslick that Charles' arm movement was much more than "reflexive" in nature. All three witnesses testified that Charles' conduct was much more like an aggressive swing or punch, twisting around his body toward the officers. Both officers testified that, as he swung his arm, Charles stated that he was not going to allow them to arrest him. Viewing the testimony of these three witnesses in the light most favorable to the prosecution, a rational juror could conclude that Charles' conduct was a conscious effort to prevent the officers from effecting his arrest.

We conclude that the District Court did not abuse its discretion in failing to dismiss *sua sponte* the resisting arrest charge

## Issue 2

Did the District Court err in its administration of the trial?

Charles alleges various errors in the District court's administration of the trial. These claims include: 1) allowing the State to present its case-in-chief concerning the domestic abuse charge; 2) allowing the State to comment on the domestic abuse charge after its dismissal; and 3) limiting Charles to evidence concerning the resisting arrest charge after the dismissal of the domestic abuse charge.

In Montana Rail Link v. Byard (1993), 260 Mont. 331, 860 P.2d 121, we stated, "[t]he standard of abuse of discretion is applied to discretionary rulings, such as trial administration issues, post-trial motions and similar rulings." Montana Rail Link, 860 P.2d at 125. Similarly, we apply an abuse of discretion standard to trial court's evidentiary rulings. State v. Passama (1993), 261 Mont. 338, 341, 863 P.2d 378, 380.

Defense counsel's only objection concerning these matters came during the State's cross-examination of Charles, and this objection was properly sustained. Charles did not object to the court's limiting his defense to evidence concerning resisting arrest or the prosecution's references to domestic abuse. Charles concedes that no objection was made to the District Court, but argues that we should review it under the plain error doctrine. In the absence of a timely objection, we may still review a district court's decisions in order to assure that the substantial rights of the parties have not been infringed and to prevent manifest injustice.

7

State v. Wilkins (1987), 229 Mont. 78, 80, 746 P.2d 588, 589. Such appeals are also limited by § 46-20-701(2), MCA, which states:

> Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. No claim alleging an error affecting jurisdictional or constitutional rights may be noticed on appeal, if the alleged error was not objected to as provided for in 46-20-104, unless the defendant establishes that the error was prejudicial as to his guilt or punishment and that:
> (a) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;
> (b) the prosecution, the judge, or a law enforcement agency suppressed evidence from the defendant or his attorney that prevented the claim from being raised and disposed of; or
> (c) material and controlling facts upon which the claim is predicated were not known to the defendant or his attorney and could not have been ascertained by the exercise of reasonable diligence.

See State v. Reynolds (1990), 243 Mont. 1, 792 P.2d 1111.

We note that the references to the underlying domestic abuse during the State's closing argument were appropriate to establish why the officers were at the Reynolds residence and to put the resisting arrest charge in proper context. We reiterate that the prosecution's questioning of Charles during cross-examination concerning the alleged domestic abuse was objected to by defense counsel and sustained by the District Court.

After a careful review of the record, we conclude that Charles has not been prejudiced by the alleged errors nor has he complied with any of the requirements contained in § 46-20-701(2), MCA. Charles has failed to show how the court's trial administration infringed upon his right to a fair trial on the resisting arrest charge. Therefore, we need not address these claims further

8

Issue 3

Was Charles denied effective assistance of counsel?

Charles claims that he was prejudiced by ineffective assistance of counsel. We have adopted the United States Supreme Court's test for determining whether a party has been denied effective assistance of counsel. In State v. Aills (1991), 250 Mont. 533, 822 P.2d 87, we stated:

> To demonstrate that counsel's performance was deficient, defendant must prove that counsel's performance fell below the range of competence reasonably demanded of attorneys in light of the Sixth Amendment. Second, the defendant must demonstrate that counsel's deficiency was so prejudicial that the defendant was denied a fair trial.

Aills, 822 P.2d at 88 (citing Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693). In reviewing an ineffective assistance of counsel claim, the trial counsel's performance "must not be tested by a greater sophistication of appellate counsel, nor by that counsel's unrivaled opportunity to study the record at leisure and cite different tactics of perhaps doubtful efficacy." State v. Martz (1988), 233 Mont. 136, 140, 760 P.2d 65, 68

In his appeal to this Court, Charles has summarized the alleged prejudicial deficiencies as follows:

> It is the position of the Appellant that trial counsel knew or should have known that his wife would not testify at District Court. Counsel should have concentrated on the elements of the offense, and should have objected to a continuation of the trial when the charge of domestic abuse was dropped. Further, it is the position of the Appellant that counsel should have requested that judgment notwithstanding as to the verdict be granted. Finally, Appellant believes that a mistrial should have been requested by his counsel.

9

Charles has failed to established these alleged prejudicial deficiencies.

First, the record does not indicate that either the prosecution or defense counsel knew with any degree of certainty that Robin would not appear and testify at trial. Therefore, the prosecution was entitled to present its case-in-chief and attempt to establish the elements of the domestic abuse charge. See State v. Pinkerton (Mont. 1995), ___ Mont. ___, 52 St.Rep. 186.

Second, the record shows that the jury was properly instructed on the elements of resisting arrest and the applicable burden of proof. Charles has failed to show how his trial counsel's failure to "concentrate" on these elements at trial prejudiced his right to a fair trial.

Third, based on our determination that the State was entitled to present its case-in-chief as to the domestic abuse charge, Charles has established no reasonable grounds by which his trial counsel could have objected to the trial continuing on the resisting arrest charge after the dismissal of the domestic abuse charge.

Finally, as discussed above, the prosecution's comments concerning domestic abuse after the dismissal of the domestic abuse charge did not constitute reversible error. Thus, Charles' trial counsel did not err by failing to request a mistrial or a judgment notwithstanding the verdict on such grounds.

We conclude that Charles was not prejudiced by ineffective assistance of counsel as his trial counsel's performance clearly

fell "within the wide range of reasonable professional assistance" required by law.   Strickland, *466* U.S. at 689.

## Issue 4

Did the District Court err in sentencing Charles?

Within the statutory sentencing guidelines, district courts are given broad discretion in sentencing criminals and such sentences will not be overturned absent an abuse of discretion. State v. Carson (1984), 208 Mont. 320, 677 P.2d 587.   Charles claims that the District Court erred by sentencing him to the same sentence ordered by the City Court.   He claims that he was convicted and sentenced for both domestic abuse and resisting arrest in City Court while he was convicted and sentenced for only resisting arrest in District Court.   He claims receiving the same sentence was inequitable and denied him *adenovo* review of the City Court's determinations.

Charles' position is based on two misconceptions.  First, this Court does not review the equity of sentences.   Reviewing whether a sentence within the applicable statutory range is equitable under the facts and circumstances of any given case is more properly the duty of the Sentence Review Board, not this Court.   State v. Dahms (1992), *252* Mont. 1, *825* P.2d 1214.

Second, a review of the record reveals that Charles did not receive identical sentences in the City Court and the District Court.   The City Court sentenced Charles to 180 days in jail and $500 plus costs for each conviction. Thus, his total sentence in City Court was one year in jail with no time suspended and over

11

$1000 in fines and costs. The District Court, on the other hand, sentenced Charles to 180 days in jail with 120 suspended and $500 plus one-half the cost of trial. His total sentence from District court, therefore, is 60 days in jail with the remaining 120 suspended and a $500 fine plus one-half the costs.

We conclude that the District Court did not abuse its discretion in sentencing Charles. The sentence is within the statutory guidelines for resisting arrest and did not deny Charles his right *ofdenovo* review from the City Court.

In his reply brief, Charles claims that any references to domestic abuse in this trial were improper due to the prosecution's failure to satisfy the notice requirements of the modified just rule. See State v. Matt (1991), 249 Mont. 136, 814 P.2d 52. This issue is raised for the first time in Charles' reply brief. The scope of a reply brief must be limited to issues raised in the response brief. Rule 23(c), M.R.App.P. Therefore, we will not address this issue on appeal.

We affirm the decision of the District Court

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of this Court and by a report of its result to State Reporter Publishing Company and West Publishing Company

_____
Chief Justice

12

We concur:

_____
William E. Hunt Sr

_____

_____
Karla M. Gray

_____
W. William Leaphart
        Justices

April 4, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Charles L. Reynolds
P.O. Box 9653
Helena, MT 59604

Charles E. Petaja
Helena Avenue Law Offices
1085 Helena Avenue
Helena, MT 59601

Hon. Joseph P. Mazurek, Attorney General
Paul Johnson, Asst. Attorney General
Justice Bldg.
Helena, MT 59620

Robert Wood
Assistant City Attorney
101 No. Last Chance Gulch
Helena, MT 59601


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *N. Gallagher*
Deputy